79 So.3d 987 (2011)
Geraldine OUBRE and Linda Gentry on their Behalf, as well as Others, Similarly Situated
v.
LOUISIANA CITIZENS FAIR PLAN.
No. 2011-C-0097.
Supreme Court of Louisiana.
December 16, 2011.
Rehearing Denied January 20, 2012.
*990 Ates Law Firm, APLC, John Robert Ates, Destrehan, LA, Robert Elton Arceneaux, Metairie, LA, Beevers & Beevers, LLP, Wiley Jerell Beevers, Stephen L. Mauterer, Gretna, LA, Herman, Herman, Katz & Cotlar, LLP, Stephen Jay Herman, Steven J. Lane, The Law Offices of Fred Herman, Fred L. Herman, New Orleans, LA, for Applicant.
Hailey, McNamara, Hall, Larmann & Papale, LLP, Richard Terrell Simmons, Jr., John T. Culotta, Daren A. Patin, John E. Unsworth, Jr., Metairie, LA, James D. Caldwell, Attorney General, Uma Maheswari Subramanian, Assistant Attorney General, Wegmann & Babst, LLC, James Anthony Babst, New Orleans, LA, Cynthia Anne Wegmann, for Respondent.
KNOLL, Justice.
This class action litigation presents two issues of first impression for this Court. The first issue, over which the Third and Fifth Circuits are divided, is whether an insurer is subject to the penalties imposed by former La.Rev.Stat. § 22:658(A)(3) for its untimely initiation of loss adjustment in the absence of a showing of bad faith. The second issue is whether the provisions of former La.Rev.Stat. § 22:1220(C) cap those penalties at five thousand dollars when damages are not proven.[1]
After class certification, plaintiffs/class representatives sought summary judgment in favor of numerous class members for the penalties provided by La.Rev.Stat. § 22:658(A)(3) arising out of the failure of Louisiana Citizens Property Insurance Corporation ("Citizens") to timely initiate loss adjustment on the enumerated members' insurance claims. The District Court granted summary judgment in plaintiffs' favor and awarded five thousand dollars in penalties for each compensable claim, totaling $92,865,000. The Court of Appeal reversed, finding a factual determination of whether the insurer breached its duty of good faith was required before assessing penalties. We granted this writ to resolve the split in the circuits regarding the proof necessary to award the penalties for failure to timely initiate loss adjustment under La.Rev.Stat. § 22:658(A)(3) and correspondingly La.Rev.Stat. § 22:1220(C). Oubre v. Louisiana Citizens Fair Plan, 11-0097 (La.4/8/11), 61 So.3d 673. For the following reasons, we find the plain language of La.Rev.Stat. § 22:658(A)(3) does not require a showing of bad faith by the insurer, but simply requires proof of notice and inaction for over thirty days. We further find the provisions of La.Rev.Stat. § 22:1220(C) cap the penalties for such inaction at five thousand dollars when damages are not proven. Finding no error in the District Court's award of the statutory cap for each failure to timely initiate, we reverse the judgment of the Court of Appeal and reinstate the District Court's judgment.

*991 FACTS
On November 18, 2005, Geraldine Oubre and Linda Gentry ("plaintiffs") on their behalf as well as others similarly situated filed this class action proceeding against their insurer, Citizens. In their petition, plaintiffs alleged they were insureds of Citizens on August 29, 2005, when Hurricane Katrina struck the Louisiana coastline, and/or on September 24, 2005, when Hurricane Rita made landfall. Plaintiffs further alleged, as a result of these storms, they suffered property damage covered by their Citizens policies and they timely notified Citizens of their losses, but Citizens failed to comply with its statutory duty to timely initiate loss adjustment as set forth in La.Rev.Stat. § 22:658(A)(3), which provided, in relevant part:
In the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim within thirty days after notification of loss by the claimant. Failure to comply with the provisions of this Paragraph shall subject the insurer to the penalties provided in R.S. 22:1220.
La.Rev.Stat. § 22:658(A)(3). Therefore, plaintiffs sought the statutory penalties set forth in La.Rev.Stat. § 22:1220, which in Subsection C specifically provided for "penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater." La.Rev.Stat. § 22:1220(C).
On July 11, 2006, the District Court granted class certification, and in an amended judgment rendered on July 17, 2006, the court issued the following class definition:
All present or past insureds of Louisiana Citizens Property Insurance Corporation a/k/a LOUISIANA CITIZENS FAIR PLAN, hereinafter referred to as "LCPIC", who, on or after August 29, 2005, provided notification of loss resulting from Hurricanes Katrina and/or Rita to LCPIC, and whose loss adjustment was not initiated within thirty (30) days after notification of loss.
Although Citizens appealed, the Court of Appeal, Fifth Circuit, affirmed the class certification, Oubre v. Louisiana Citizens Fair Plan, 07-66 (La.App. 5 Cir. 5/29/07), 961 So.2d 504, and this Court denied writ, Oubre v. Louisiana Citizens Fair Plan, 07-1329 (La.9/28/07), 964 So.2d 363.
After the expiration of the discovery deadline, plaintiffs filed a motion for partial summary judgment, asking the court to decide, as a matter of law, what constitutes an "initiation of loss adjustment" under La.Rev.Stat. § 22:658(A)(3). In their motion, plaintiffs argued, as a matter of law, Citizens did not initiate loss adjustment until its adjusters contacted the insured to set an appointment to inspect the loss. They further contended Citizens admitted to such by posting on its website a notification that adjustment would begin when it made contact with its policyholders.[2] Citizens opposed this motion, arguing *992 the issue concerned the reasonableness of its actions under the circumstances and, thus, presented genuine issues of material fact, which precluded summary judgment.
By judgment rendered on September 18, 2008, the District Court granted partial summary judgment in favor of plaintiffs, reasoning:
When deciding what constitutes initiating loss adjustment, courts have consistently held that "the insurer must take some substantive and affirmative step to accumulate the facts that are necessary to evaluate the claim." Phillips v. Osmun, 967 So.2d 1209, 1216 (La.App. 3rd Cir.10/24/07); citing, Chatoney v. Safeway Insurance Company, 00-1189, (La. App. 3 Cir. 6/13/01), 2001 WL 665207, 801 So.2d 448; McClendon v. Economy Fire & Casualty Insurance Company, 98-1573 (La.App. 3 Cir. 4/7/99), 732 So.2d 727, 731. This court finds that making an appointment to assess the damage to the property or an adjuster inspecting the property without an appointment does satisfy the requirements of La. R.S. 22:658(A)(3).
Both the appellate court and this Court declined to exercise supervisory jurisdiction, denying Citizens' applications for supervisory review of this judgment. Oubre v. Louisiana Citizens Fair Plan, 08-1157 (La.App. 5 Cir. 11/12/08), writ denied, 08-2826 (La.2/6/09), 999 So.2d 779.
On October 28, 2008, plaintiffs filed a motion for summary judgment, seeking judgment in favor of 11,020 class members, identified as Group I, in the amount of $55,100,000, representing penalties in the amount of $5,000 per class member as provided by La.Rev.Stat. § 22:1220(C). On December 30, 2008, plaintiffs filed a second motion for summary judgment, seeking judgment in favor of 7,174 class members, identified as Group II, for $35,870,000. That same day, plaintiffs filed a third motion for summary judgment, seeking judgment in favor of 379 class members, identified as Group III, for $1,895,000. In support of all three motions, plaintiffs submitted affidavits and spreadsheets listing the 18,573 policyholders and the corresponding dates when they reported their losses and when an adjuster either made an appointment to inspect the property or actually inspected the property if no appointment was made.
Also on December 30, 2008, Citizens filed several pleadings, seeking summary resolution of plaintiffs' claims. First, Citizens filed a motion for partial summary judgment on the basis that some class members had previously executed a receipt or release discharging Citizens from all claims arising from damage to their properties sustained as a result of Hurricanes Katrina and Rita. Second, Citizens filed a cross-motion for partial summary judgment regarding liability under La.Rev. Stat. § 22:658, arguing a factual determination was first required as to whether "the insurer's actions were arbitrary, capricious, and without probable cause before liability or penalties may be imposed." Third, Citizens filed a motion for summary judgment on the basis that Citizens was not an "insurer" within the meaning of Louisiana law and was, therefore, not subject to the penalties prescribed by La.Rev. Stat. § 22:658 and/or La.Rev.Stat. § 22:1220. Finally, Citizens filed a motion for partial summary judgment, arguing the Emergency Orders executed by the State of Louisiana and the advance payments made to class members relieved Citizens of liability for penalties in this matter. Plaintiffs opposed each of these motions.
On January 30, 2009, the District Court heard argument of counsel and, by judgment rendered on March 20, 2009, denied the majority of defendant's motions, finding Citizens was in fact an insurer within *993 the meaning of Louisiana law and the mass advance payments did not constitute loss adjustment. The District Court likewise found La.Rev.Stat. § 22:658(A)(3) does not provide an exception for failure to initiate loss adjustment within thirty days and further determined the statute does not require a factual determination of the insurer's conduct before penalties may be imposed. However, the District Court did grant defendant's motion on the executed releases.
That same day, the District Court rendered judgment, granting plaintiffs' three motions for summary judgment, except as to those individuals who timely opted out of the class or executed release agreements. In its reasons, the District Court explained:
On September 18, 2008, this Court granted plaintiffs' partial motion for summary judgment, finding that "making an appointment to assess the damage to the property or an adjuster inspecting the property without an appointment does satisfy the requirement of La. R.S. 22:658(A)(3)."
More recently, the Court denied the defendant's partial motion for summary judgment re: emergency orders and advance payments, finding that "the mass advance payments made by the insurer do not constitute loss adjustment." On that same date, the Court denied the defendant's cross motion for partial motion [sic] for summary judgment re: liability under La. R.S. 22:658, finding "that the statute and status of the current law does not provide an exception for defendant's failure to institute loss adjustment within thirty days after notification of loss by the claimant" and "that the penalty provision of La. R.S. 22:658(A)(3), unlike the other provisions of La. R.S. 22:658, does not require a factual determination of arbitrary and capricious conduct before liability and/or penalties may be imposed against the insurer."
Thus, the Court has already ruled on the issue of liability and what does or does not constitute the initiation of loss adjustment. The issue presented in plaintiffs' motions for summary judgment is that of the identity of the claimants that fit within the class definition.
* * *
Defendant claims that plaintiffs cannot prevail in their motions for summary judgment. Defendant argues that plaintiffs documents used in their motions are hearsay, and lack reliability, that the affidavits attached to the motions do not lay a foundation for the documents and that the process of identifying the dates in the documents is untrustworthy. Yet, these documents are the defendant's documents, LCPIC's records. The evidence used by plaintiffs in support of their motions for summary judgment are documents produced by defendant in discovery. Defendant asks the Court to accept these documents as all the proof that defendant has as to the names and dates of claims filed by insureds of LCPIC for damage caused by Hurricane Katrina and Rita. The defendant now argues that the Court should not use the documents as evidence, stating that the documents "reveal a serious lack of reliability" and that "the process of identifying these dates is not trustworthy."
"Argument of counsel and briefs, no matter how artful, are not sufficient to raise a genuine issue of material fact. Despite the presence of disputed facts, summary judgment will be granted as a matter of law if the contested facts present no legal issues." Rapp v. City of New Orleans, 681 So.2d 433, 437 (La. App. 4 Cir. 9/18/96), citing Davenport v. Amax Nickel, Inc., 569 So.2d 23, 27 (La.App. 4 Cir.) writ denied 572 So.2d 68 (La.1991).

*994 As stated earlier, the only issue to be decided within plaintiffs' First, Second and Third Motion for Summary Judgment is the identity of the class members. The Court finds that the documents (records), identifying individual class members, provided to plaintiffs by defendant do establish the right to judgment for those identified class members. Obviously those individuals who have timely opted out of the class can not recover. The Court has also granted defendant's Motion for Partial Summary Judgment Re: Executed Releases as to those individuals who executed a Receipt, Release and Indemnity Agreement identical to the form marked as Exhibit A in defendant's Motion for Partial Summary Judgment Re: Executed Release; likewise, these individuals can not recover.
On March 25, 2009, plaintiffs filed a motion to amend judgment to include the required decretal language, which would name "the party in favor of whom the ruling is ordered, the party against whom the ruling is ordered, and the relief that is granted or denied." Plaintiffs also moved the judgment be designated as final and immediately appealable in accordance with La.Code Civ. Proc. art. 1915.
The following day, the District Court rendered an amended judgment in favor of class members identified in Groups I, II, and III and against Citizens in the amount of $92,865,000, subject to credit given to Citizens for those individuals who timely opted out of the class or executed a binding release agreement. The District Court further designated the judgment as final and immediately appealable pursuant to La.Code Civ. Proc. art. 1915, having found no just reason for delay. On March 31, 2009, the District Court also rendered amended judgments on each of Citizens' motions for summary judgment, designating the rulings as final and immediately appealable.
On April 1, 2009, Citizens filed a motion for new trial on the basis the judgment was contrary to law and evidence and the trial court erred in amending the judgment to include the decretal language and determining the rulings were final and appealable.[3] By judgment rendered on May 8, 2009, the District Court denied Citizens' motion for new trial.[4]
*995 Citizens then moved for and was granted a suspensive appeal of the District Court's judgment granting plaintiffs' motions for summary judgment. Citizens also devolutively appealed from the District Court's denial of its motions for summary judgment.[5]
Considering the entirety of Citizens' appeal, the Court of Appeal, Fifth Circuit, reversed the judgment of the District Court, finding an insurer can only be subject to penalties for failing to initiate loss adjustment in a timely manner if done so in bad faith:
While we acknowledge that La. R.S. 22:658(B) omits reference to La. R.S. 22:658(A)(3), we find that this portion of the statute, by its own terms, contains a reference to penalties while the other sections of the statute do not. La. R.S. 22:658(A)(3) specifically states that failure to comply with that paragraph subjects the insurer to penalties provided in La. R.S. 22:1220. La. R.S. 22:1220 is a statute which imposes penalties on an insurer for breach of the good faith duty. Pursuant to La. R.S. 22:1220(A), an insurer has a duty of good faith and fair dealing toward its insured, including the duty to adjust claims fairly and promptly. Willard v. R & B Falcon Drilling USA, Inc., 01-2334, p. 7 (La. App. 1 Cir. 12/20/02), 836 So.2d 424, 429.
La. R.S. 22:1220 A also imposes a duty of good faith and fair dealing in performance of the insurance contract. See, La. C.C. art. 1983. Breach of this duty by the insurer renders it liable for any damages, foreseeable or not, that are a direct consequence of its failure to *996 perform. La. C.C. art. 1997; La. R.S. 22:1220 A. Williams v. Louisiana Indem. Co., 26,887, p. 3 (La.App. 2 Cir. 6/21/95), 658 So.2d 739, 742. The burden is on the insured to prove arbitrariness, capriciousness, or lack of probable cause. Talton v. USAA Cas. Ins. Co., 06-1513, p. 16 (La.App. 4 Cir. 3/19/08), 981 So.2d 696, 708, writ denied, 08-837 (La.6/6/08), 983 So.2d 923.
* * *
A reasonable interpretation of these two statutes indicates that in order to subject an insurer to penalties for failing to initiate loss adjustment in a timely manner, the insurer must be found to have breached the duty of good faith. La. R.S. 22:658(A)(3) allows the imposition of penalties as set forth in La. R.S. 22:1220, which clearly imposes a good faith duty on the insurer in its dealings with the insured. As stated in La. R.S. 22:1220A, an insurer owes his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly. A reading of these two statutes together indicates that an assessment of whether the insured breached its duty of good faith is required prior to an assessment of penalties. Further, Louisiana law does not specifically distinguish between the terms "arbitrary and capricious" and "bad faith."
Oubre v. Louisiana Citizens Fair Plan, 09-620, pp. 21-22 (La.App. 5 Cir. 11/9/10), 53 So.3d 492, 504-05. Moreover, because bad faith should not be inferred from an insurer's failure to pay within the statutory time limits when reasonable doubt exists for such failure, the appellate court found the determination of whether an insurer has breached its duty of good faith and is liable for penalties necessarily requires a factual determination by the trial court. Id. at p. 25, 53 So.3d at 506.[6]
The Court of Appeal further found "no support for plaintiffs' argument that the $5,000 penalty imposed by the trial court for each claim was a mandatory minimum." Id. Rather, it concluded La.Rev. Stat. § 22:1220(C) clearly provides a mandatory maximum of five thousand dollars, but any assessment of penalties necessarily requires an initial factual assessment by the trial court of the particular facts of the particular case. Accordingly, the appellate court remanded the matter to the trial court for further proceedings.[7]
Both parties then sought writs to this Court. Although we denied Citizens' application on the issue of decertification, see Oubre v. Louisiana Citizens Fair Plan, 11-173 (La.4/8/11), 61 So.3d 687, we granted plaintiffs' application to resolve the split in the circuits regarding the proof necessary *997 to recover penalties under La.Rev. Stat. § 22:658(A)(3) and La.Rev.Stat. § 22:1220(C), and to determine whether the latter statute provides a floor or a ceiling of five thousand dollars on such penalty awards when damages are not proven.

DISCUSSION
At the outset, we acknowledge the issues in this case are ones of statutory interpretation, and given the split in the circuits, it falls to this Court to determine the proper interpretation of the two relevant statutory provisions. Because any such interpretation must be guided by the well-established rules of statutory construction, we begin our analysis with a discussion of the applicable rules.
In accord with these rules, the interpretation of any statutory provision starts with the language of the statute itself. In re Succession of Faget, 10-0188, p. 8 (La.11/30/10), 53 So.3d 414, 420. When the provision is clear and unambiguous and its application does not lead to absurd consequences, its language must be given effect, and its provisions must be construed so as to give effect to the purpose indicated by a fair interpretation of the language used. La. Civ.Code art. 9; La.Rev.Stat. § 1:4; In re Clegg, 10-0323, p. 20 (La.7/6/10), 41 So.3d 1141, 1154. Unequivocal provisions are not subject to judicial construction and should be applied by giving words their generally understood meaning. La. Civ.Code art. 11; La.Rev.Stat. § 1:3; see also Snowton v. Sewerage and Water Bd., 08-0399, pp. 5-6 (La.3/17/09), 6 So.3d 164, 168.
Words and phrases must be read with their context and construed according to the common and approved usage of the language. La.Rev.Stat. § 1:3. "The word `shall' is mandatory and the word `may' is permissive." Id. Further, every word, sentence, or provision in a law is presumed to be intended to serve some useful purpose, that some effect is given to each such provision, and that no unnecessary words or provisions were employed. Colvin v. Louisiana Patient's Compensation Fund Oversight Bd., 06-1104, p. 6 (La.1/17/07), 947 So.2d 15, 19; Moss v. State, 05-1963, p. 15 (La.4/4/06), 925 So.2d 1185, 1196. Consequently, courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause, or word as meaningless and surplusage if a construction giving force to and preserving all words can legitimately be found. Colvin, 06-1104 at p. 6, 947 So.2d at 19-20; Moss, 05-1963 at p. 15, 925 So.2d at 1196.
"Laws on the same subject matter must be interpreted in reference to each other." La. Civ.Code art. 13. Moreover, where two statutes deal with the same subject matter, they should be harmonized if possible, as it is the duty of the courts, in the construction of statutes, to harmonize and reconcile laws. LeBreton v. Rabito, 97-2221, p. 7 (La.7/8/98), 714 So.2d 1226, 1229; Chappuis v. Reggie, 222 La. 35, 44, 62 So.2d 92, 95 (1952). However, if there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character. LeBreton, 97-2221 at p. 7, 714 So.2d at 1229; Kennedy v. Kennedy, 96-0732, p. 2 (La.9/9/97), 699 So.2d 351, 358 (on rehearing). Additionally, statutes that are penal in nature must be strictly construed. Reed v. State Farm Mut. Auto. Ins. Co., 03-107, p. 13 (La. 10/21/03), 857 So.2d 1012, 1020. Accordingly, we are bound to a strict interpretation of the plain language of the penalty provisions to which we now turn.
At the time the losses were sustained in the present case, La.Rev.Stat. § 22:658(A)(3) provided:
Except in the case of catastrophic loss, the insurer shall initiate loss adjustment *998 of a property damage claim and of a claim for reasonable medical expenses within fourteen days after notification of loss by the claimant. In the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim within thirty days after notification of loss by the claimant. Failure to comply with the provisions of this Paragraph shall subject the insurer to the penalties provided in R.S. 22:1220.

La.Rev.Stat. Ann. § 22:658(A)(3)(emphasis added).[8] At all relevant times, La.Rev. Stat. § 22:1220 provided:
A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.
(2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.
(3) Denying coverage or attempting to settle a claim on the basis of an application which the insurer knows was altered without notice to, or knowledge or consent of, the insured.
(4) Misleading a claimant as to the applicable prescriptive period.
(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.
D. The provisions of this Section shall not be applicable to claims made under health and accident insurance policies.

*999 E. Repealed by Acts 1997, No. 949, § 2.
F. The Insurance Guaranty Association Fund, as provided in R.S. 22:1375 et seq., shall not be liable for any special damages awarded under the provisions of this Section.
La.Rev.Stat. Ann. § 22:1220 (emphasis added).
As previously discussed, the lower courts' interpretation of the above-emphasized provisions has resulted in a conflict between the Fifth and Third Circuits. On one hand, the Fifth Circuit has found that "[a] reasonable interpretation of these two statutes indicates that in order to subject an insurer to penalties for failing to initiate loss adjustment in a timely manner, the insurer must be found to have breached the duty of good faith." Oubre, 09-620 at p. 22, 53 So.3d at 505. In reaching this conclusion, the Fifth Circuit examined La. Rev.Stat. § 22:1220 in its entirety, expanding its focus beyond the relevant penalty provision and imposing a duty of good faith by inference and mere proximity of the penalty provision to the preceding statutory provision, i.e., La.Rev.Stat. § 22:1220(A), which explicitly imposes a duty of good faith.
On the other hand, the Third Circuit has held that "while violations of the specific provisions of La.Rev.Stat. § 22:1220 require a finding that the insurer was arbitrary, capricious, or without probable cause, failure to comply with La. R.S. 22:658(A)(3) `shall subject the insurer to the penalties provided in R.S. 22:1220' irrespective of [the insurer's] justifications." Joubert v. Broussard, 02-911, pp. 2-3 (La. App. 3 Cir. 12/11/02), 832 So.2d 1182, 1185, writ denied, 03-0060 (La.3/31/03), 840 So.2d 552; see also McClendon v. Economy Fire & Cas. Ins. Co., 98-1537, pp. 7-8 (La.App. 3 Cir. 4/7/99), 732 So.2d 727, 731. Unlike its appellate counterpart, the Third Circuit limited its focus strictly to the relevant statutory language.
Constrained as we are to a strict construction of the plain language of the statutory provisions, our interpretation conforms with the Third Circuit's interpretation for the reasons that follow.

La.Rev.Stat. § 22:658(A)(3)
Under the plain language of La.Rev. Stat. § 22:658(A)(3), "[i]n the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim within thirty days after notification of loss by the claimant." In accord with the well-established rules of statutory construction, by using the word "shall," the Legislature through this provision imposed a mandatory duty to timely initiate loss adjustment within thirty days of notice. See La.Rev. Stat. § 1:3 ("The word `shall' is mandatory...."). Then, in the very next provision, the Legislature prescribed a mandatory penalty for breach of this duty by explicitly providing that "[f]ailure to comply with this mandatory duty shall subject the insurer to the penalties provided in R.S. 22:1220." Id.
Notably absent from these provisions is any reference to good or bad faith, arbitrariness, or capriciousness; nor is a showing of bad faith required before the imposition of penalties. Moreover, La. Rev.Stat. § 22:1220(B) specifically lists the acts that subject the insurer to the penalties based upon bad faith.[9] Noticeably *1000 missing from this listing is failure to timely initiate loss adjustment, which is separately provided for in La.Rev.Stat. § 22:658(A)(3). Bad faith is simply not required to subject the insurer to penalties for failure to timely initiate loss adjustment. Rather, to subject the insurer to penalties, the insured need only provide proof of notice and the failure of the insurer to initiate loss adjustment for a certain amount of time, i.e., thirty days. It is the insurer's inaction alone that triggers the penalty; no justification or lack thereof on the part of the insurer need be shown. Requiring the insured to prove bad faith as a prerequisite to the award of penalties as advocated by the Fifth Circuit would, therefore, only serve to interject a requirement not provided in the statute, and seriously interferes with the Legislature's policy considerations for encouraging insurers to timely commence loss adjustment with their insureds.[10]
Moreover, we have long recognized the State, through the valid exercise of its police power, imposes statutory penalties "to discourage certain types of conduct by an insurer." Sultana Corp. v. Jewelers Mut. Ins. Co., 03-0360, p. 8 (La.12/3/03), 860 So.2d 1112, 1118 (quoting Midland Risk Ins. Co. v. State Farm Mut. Auto. Ins. Co., 93-1611 (La.App. 3 Cir. 9/21/94), 643 So.2d 242). In this vein, the language of La.Rev.Stat. § 22:568(A)(3), in an effort to discourage untimely initiation of loss adjustment, subjects the insurer to the penalties provided in La.Rev.Stat. § 22:1220 merely upon proof of its failure to initiate loss adjustment within the time allotted, irrespective of its justification. If this requirement was not so, the statute's *1001 purpose to prevent untimely initiation of loss adjustment more often than not would be thwarted because claimants may very well decide not to file claims against insurers for the proscribed conduct if the insurers are allowed to advance whatever reasons for their untimely delay. As an end result, the misconduct, which the Legislature explicitly intended to curb or deter, would thrive. Moreover, the differences in the delays for initiation of loss adjustment in non-catastrophic cases, i.e., 14 days, versus catastrophic cases, i.e., 30 days, set forth in La.Rev.Stat. § 22:658(A)(3) obviously shows the Legislature's consideration of both circumstances in the imposition of penalties.
Therefore, we find, under the plain language of the statutory provision, once a breach of the statutory duty to timely initiate loss adjustment is proven, the court must impose "the penalties provided in R.S. 22:1220," which Subsection C sets forth: "in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater." La. Rev.Stat. § 22:1220(C). To what extent this provision, in turn, sets a limit on the penalty award for breach of the aforementioned duty presents the next issue for this Court to address.

La.Rev.Stat. § 22:1220(C)
On one hand, plaintiffs assert the plain language of La.Rev.Stat. § 22:1220(C) sets forth a minimum penalty of five thousand dollars when damages are not proven. In support of their position, plaintiffs focus on the language of the statute, which provides for an award of "two times the damages sustained or five thousand dollars, whichever is greater." Citizens, on the other hand, argues five thousand dollars is the maximum award in such circumstances by placing particular emphasis on the statutory language providing for penalties "in an amount not to exceed two times the damages sustained or five thousand dollars...."
In resolving this issue of statutory construction, we are once again bound in our interpretation by the plain and explicit language of the statute. However, we are also guided in our resolution of this particular issue by our previous interpretation of the relevant provision.
Significantly, in Sultana Corporation v. Jewelers Mutual Ins. Co., 03-0360 at p. 9, 860 So.2d at 1119, we held an insured is not required "to prove that it suffered damages as a prerequisite for the discretionary award of penalties under Section (C) of LA.REV.STAT.ANN. § 22:1220." We reached this conclusion by examining the relevant provision and reasoning that "[r]equiring the insured or claimant to prove general or special damages as a prerequisite to the award of penalties... interjects a requirement not provided in the statute," which specifically allows for penalties "[i]n addition to any general or special damages to which a claimant is entitled...." Id., at p. 8, 860 So.2d at 1119.[11] Thus, in accord with this holding and the reasoning adopted therein, actual damages need not be proven to recover the penalty set forth in La.Rev.Stat. § 22:1220(C), nor is such proof required by the explicit language of La.Rev.Stat. § 22:658(A)(3).
It follows, therefore, when damages are not proven, the greater of the two enumerated amounts, i.e., two times the damages sustained or five thousand dollars, is five thousand dollars, and the award for breach of the insurer's duty to timely initiate loss *1002 adjustment should be assessed within such an amount, meaning anywhere up to five thousand dollars. Thus, when damages are not proven, penalties shall be "assessed against an insurer in an amount not to exceed ... five thousand dollars."[12] This is so because in grammatical terms, "not to exceed two times the damages sustained or five thousand dollars" is an infinitive phrase in which two times the damages sustained or five thousand dollars serves as the compound direct object of the infinitive expression not to exceed.
Moreover, contrary to plaintiffs' position, there is no reading of the statutory language that would associate the phrase "five thousand dollars" more directly with the noun "penalties" without requiring either additions to, or deletions from, the statutory language, which our rules of statutory construction do not allow. See La. Rev.Stat. § 1:3; Colvin, 06-1104 at p. 6, 947 So.2d at 19-20; Moss, 05-1963 at p. 15, 925 So.2d at 1196. Simply put, for plaintiffs' position to prevail, the statute must read "penalties assessed against an insurer in an [the] amount ... [of] five thousand dollars" or "in an amount not to exceed two times the damages sustained or [of] five thousand dollars."
Accordingly, we find, under the explicit language of the statutory provisions, the five thousand dollar cap acts as a ceiling on the mandatory penalty award for breach of the duty to timely initiate loss adjustment when damages are not proven. The only remaining issue for this Court to address, therefore, is whether this matter was ripe for summary judgment.

Summary Judgment
As this Court has previously stated, a motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Schultz v. Guoth, 10-0343, p. 5 (La.1/19/11), 57 So.3d 1002, 1005; Samaha v. Rau, 07-1726, pp. 3-4 (La.2/26/08), 977 So.2d 880, 882-83; Duncan v. U.S.A.A. Ins. Co., 06-363, p. 3 (La.11/29/06), 950 So.2d 544, 546, see La.Code Civ. Proc. art. 966. An issue is genuine "if reasonable persons could disagree." Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751 (quoting W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 481 (1983)). A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. Id.; Penalber v. Blount, 550 So.2d 577, 583 (La.1989). Any doubt as to a dispute regarding a genuine issue of material fact must be resolved against granting the motion and in favor of a trial on the merits. Sassone v. Elder, 626 So.2d 345, 352 (La.1993).
Nevertheless, summary judgments are favored under the law as they are designed to secure the just, speedy, and inexpensive determination of every action. La.Code *1003 Civ. Proc. art. 966(A)(2). Accordingly, rules are liberally construed to accomplish these ends, and a motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ. Proc. art. 966(B).
Initially, the burden of producing evidence at the hearing on the motion for summary judgment is placed on the mover who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent's case. La.Code Civ. Proc. art. 966(C)(2); Schultz, 10-0343 at p. 6, 57 So.3d at 1006; Samaha, 07-1726 at p. 4, 977 So.2d at 883. "At that point, the party who bears the burden of persuasion at trial (usually the plaintiff) must come forth with evidence (affidavits or discovery responses) which demonstrates he or she will be able to meet the burden at trial." Samaha, 07-1726 at p. 4, 977 So.2d at 883 (quoting Wright v. Louisiana Power & Light, 06-1181, p. 16 (La.3/9/07), 951 So.2d 1058, 1069-70). Thus, "[o]nce the motion for summary judgment has been properly supported by the moving party, the failure of the nonmoving party to produce evidence of a material factual dispute mandates the granting of the motion." Id.
In the present case, summary judgments were rendered in plaintiffs' favor based on the provisions of La.Rev.Stat. § 22:658(A)(3) and La.Rev.Stat. § 22:1220(C) as interpreted by the District Court. As previously discussed, that court found, as a matter of law, "that making an appointment to assess the damage to the property or an adjuster inspecting the property without an appointment" satisfied the initiation of loss adjustment requirement contained in La.Rev.Stat. § 22:658(A)(3).
Pursuant to this holding, plaintiffs filed three motions for summary judgment, seeking to establish, as a matter of law, the identity of 18,573 class members who based upon Citizens' own claims records did not have their loss adjustment initiated within the statutorily mandated thirty days. In support of their motions, plaintiffs produced electronic Excel files documenting the dates when the enumerated plaintiffs reported their losses and when an adjuster either made an appointment to inspect the property or actually inspected the property if no appointment was made. These files showed the length of time from the date of notice to the date of action by Citizens was greater than thirty calendar days. All the information contained in these electronic Excel files was compiled from Citizens' voluminous business records obtained through discovery, and the files themselves constituted summaries as contemplated by La.Code Evid. art. 1006.[13] Plaintiffs also provided the affidavits of those individuals who compiled the spreadsheets. See La.Code Civ. Proc. arts. 966 and 967. In these documents, the affiants attested to how the information was put into the spreadsheets and how a hyperlink was attached so the court could click on the link and see the supporting documentation.
Through this documentation, i.e., Citizens' claims records and corresponding *1004 summaries, plaintiffs established a prima facie case Citizens did not initiate loss adjustment by either contacting plaintiffs for an appointment to inspect the property or inspecting the property without such an appointment within the statutory time frame. Consequently, it then fell to Citizens to produce factual support sufficient to rebut plaintiffs' evidence by proving some type of loss initiation was initiated timely. Citizens, however, produced no such evidence.[14]
Rather, Citizens filed several motions for summary judgment, arguing (1) a factual determination was required concerning whether the insurer's actions subjected it to penalties under La.Rev.Stat. § 22:658(A)(3), (2) it was not subject to penalties because it was not an insurer within the meaning of Louisiana law,[15] (3) the Emergency Orders executed by the State of Louisiana, suspending various healthcare-related requirements and legal proceedings, as well as the advance payments made to class members relieved Citizens of liability, and (4) some class members had previously executed a receipt and release discharging Citizens from all claims arising from damage to their properties sustained during the storms. Essentially, Citizens argued the "beyond catastrophic" circumstances and its advance payments relieved it of liability and introduced evidence purporting to show that Hurricanes Katrina and Rita wrecked havoc upon the infrastructure of Southern Louisiana and created obstacles to the settlement and resolution of insurance claims within any short period of time.
However, La.Rev.Stat. § 22:658(A)(3), by its plain and explicit language, does not allow for any exceptions to liability, even in so-called "super catastrophes," nor does it necessitate or allow for a showing of bad faith or justification. Under its mandatory directives, either the insurer timely initiates loss adjustment, or the insurer is subject to penalties. Thus, Citizens' arguments, along with its incorporated data consisting of executive orders, proclamations, and timelines, all fail to show a genuine issue of *1005 material fact concerning whether or not it acted in a timely manner.
Likewise, Citizens' attempt to demonstrate initiation of loss adjustment through the issuance of the "pre-printed" advance checks for additional living expenses (ALE) falls short of refuting plaintiffs' position. Citizens artfully claims the issuance of these pre-printed checks resulted from an "en masse" type of evaluationflyovers and aerial surveillance of flooded areas. However, the letters accompanying the pre-printed checks specifically provided the funds were issued conditioned upon an eventual evaluation of the recipient's claim:
Dear Policyholder:
You have notified [Citizens] that you have sustained covered losses under your policy due to Hurricane Katrina. [Citizens] does not presently have sufficient information to verify your claim but with full reservation of rights, and based upon your representations, [Citizens] is advancing you $1,500 against your expected covered loss.
You are advised that [Citizens] will undertake to investigate this claim under full reservation of its rights to deny coverage for all or any part of the claim which is determined not to be covered....
* * *
It is essential that you telephone the undersigned at 225-928-4444 in order to provide us with additional information concerning the claim.
Again, you are reminded that the amount advanced is based upon your representation that you have a covered loss over your deductible. Should it be determined that your claim is not covered or does not exceed the deductible, you will be required to return this advance. Please indicate your agreement by your signature.[16]
As the letter explicitly acknowledges, the advance payments were based upon the recipient's representation of a covered loss and conditioned upon an eventual evaluation of the claim; thus, they do not constitute an initiation of an adjustment, i.e., a substantive and affirmative step to accumulate the facts necessary to evaluate the actual underlying claim. See Phillips v. Osmun, 07-50, p. 10 (La. App. 3 Cir. 10/24/07), 967 So.2d 1209, 1216 (loss adjustment timely initiated by sending packet within 48 hours, prompt settlement negotiations, and repeated contact with attorney); Talton v. USAA Cas. Ins. Co., 06-1513, pp. 13-14 (La.App. 4 Cir. 3/19/08), 981 So.2d 696, 706 (calling to set inspection date by mid-September sufficient), writ denied, 08-0837 (La.6/6/08), 983 So.2d 923; Toerner v. Henry, 00-2934, pp. 3-4 (La.App. 1 Cir. 2/15/02), 812 So.2d 755, 757 (speaking with repair shop, reviewing file, and determining faulty repair not insurance claim sufficient), writ denied, 02-1259 (La.8/30/02), 823 So.2d 951; Joubert, 02-0911 at p. 2, 832 So.2d at 1184 (internal review of files to determine coverage and sending of letter insufficient; "did not evaluate claim"); Hollier v. *1006 State Farm Mut. Auto. Ins. Co., 01-0592, p. 5 (La.App. 3 Cir. 10/31/01), 799 So.2d 793, 797 (opening claims file insufficient), writ denied, 01-3163 (La.2/22/02), 810 So.2d 1135; McClendon, 732 So.2d at 731 (same); Deimel v. Dewhirst, 99-465, p. 5 (La.App. 5 Cir. 11/10/99), 750 So.2d 1055, 1058 (check tendered months after claim made and truck taken to estimator insufficient), writ denied, 99-3478 (La.2/11/00), 754 So.2d 941. Simply stated, these checks were mass issued and then handed out merely upon the recipient's word without any step taken by Citizens to evaluate the underlying claims; so, even if all class members received the ALE advance checks, the issuance of the checks still does not satisfy the requirement that Citizens take affirmative and substantive steps to evaluate the claim in order to constitute the initiation of loss adjustment.
It follows, therefore, on the state of this evidence, reasonable persons could reach only one conclusion, i.e., Citizens did not timely initiate loss adjustment of the enumerated members' claims by either contacting plaintiffs for an appointment to inspect the property or inspecting the property without such an appointment within the statutory time frame. Accordingly, there is no need for a trial on this issue, and summary judgment as a matter of law was appropriate.
Finally, as there was no genuine issue of material fact regarding the failure of Citizens to timely initiate loss adjustment and because damages were not proven, plaintiffs were entitled, as a matter of law, to "penalties ... in an amount not to exceed... five thousand dollars." Therefore, we find the District Court did not err in awarding each plaintiff an amount consistent with the statutory five thousand dollar cap for Citizens' untimely initiation of his loss adjustment. We further find the District Court did not err in awarding Citizens a credit for those plaintiffs who executed binding releases or opted out of the class.

CONCLUSION
In summary, we find the plain language of La.Rev.Stat. § 22:658(A)(3) does not require a showing of bad faith, but simply requires proof of notice and inactivity within a certain amount of time to subject the insurer to penalties. We further find La.Rev.Stat. § 22:1220(C) caps those penalties at five thousand dollars when damages are not proven. As no genuine issue of material fact exists regarding whether Citizens timely initiated loss adjustment and because damages were not proven, we find the District Court did not err in granting summary judgment and in awarding each individual plaintiff five thousand dollars in statutory penalties, subject to a credit in Citizens' favor for those plaintiffs who executed binding releases or opted out of the class. Consequently, we reverse the judgment of the Court of Appeal and reinstate the judgment of the District Court.

DECREE
For the foregoing reasons, the judgment of the Court of Appeal is hereby reversed, and the judgment of the District Court is hereby reinstated.
REVERSED; DISTRICT COURT JUDGMENT REINSTATED.
VICTORY, Justice, dissents for the reasons assigned by Justice WEIMER.
WEIMER, Justice, dissents and assigns reasons.
GUIDRY, Justice, dissents for reasons assigned.
WEIMER, J., dissenting.
I very respectfully dissent. As the majority opinion correctly notes, statutes subjecting *1007 insurers to penalties are considered penal in nature and should be strictly construed. See Hart v. Allstate Ins. Co., 437 So.2d 823, 827 (La.1983); see also Louisiana Bag Co., Inc. v. Audubon Indem. Co., 08-0453, p. 25 (La.12/2/08), 999 So.2d 1104, 1120.
In the case of catastrophic loss, former La. R.S. 22:658(A)(3) clearly obligated an insurance company to "initiate loss adjustment of a property damage claim within thirty days after notification of loss by the claimant." In addressing an insurer's failure to fulfill this obligation, La. R.S. 22:658(A)(3) referred to the entirety of former La. R.S. 22:1220, which required the claimant to show that an insurer breached its duty of good faith and fair dealing to prove entitlement to any damages sustained as a result of the breach and to prove entitlement to penalties. See La. R.S. 22:1220(A) and (C).
Furthermore, La. R.S. 22:1220(C) stated that the court "may" award penalties and also spoke of penalties in terms of "if awarded," indicating that the award of penalties pursuant to La. R.S. 22:1220(C) was discretionary.
Constrained by the principle that penal statutes are to be strictly construed and by the language of former La. R.S. 22:658(A)(3) and La. R.S. 22:1220, I would affirm the decision of the court of appeal. Notably, in addressing the insurer's liability under La. R.S. 22:658(A)(3) and 22:1220 for failure to timely initiate loss adjustment, the court in French v. Allstate Indemnity Co., 637 F.3d 571, 591 (5th Cir. 2011), cert. denied, ___ U.S. ___, 132 S.Ct. 420, 181 L.Ed.2d 260, 2011 WL 3608759 (2011), quoting Oubre v. La. Citizens Fair Plan, 09-0620, p. 22 (La.App. 5 Cir. 11/9/10), 53 So.3d 492, 505, stated that "[a] reasonable interpretation of these two statutes [La. § R.S. 22:658(A)(3) and § 22:1220] indicates that in order to subject an insurer to penalties for failing to initiate loss adjustment in a timely manner, the insurer must be found to have breached the duty of good faith." Finding that the insurer in French had not acted in bad faith in its initiation of the loss adjustment, the court declined to impose liability for any penalties on the claim for breach of the duty to initiate loss adjustment. French, 637 F.3d at 591. Requiring a finding of bad faith in the loss adjustment process is bolstered by the fact that a showing of bad faiththat the insurer was arbitrary, capricious, or without probable causeis required to recover penalties where an insurer has failed to pay a settlement within 30 days after an agreement is reduced to writing. See La. R.S. 22:1220(B)(2); see also La. R.S. 22:658(A)(2) and (B)(1).
GUIDRY, J., dissents and assigns reasons.
I disagree with the majority's conclusion that La.Rev.Stat. § 22:658(A)(3) does not require a showing of bad faith prior to the imposition of penalties for failure to initiate loss adjustment in a timely manner. I would, therefore, affirm the lower court's ruling that the plaintiff is required to prove the insurer was arbitrary, capricious, or without probable cause before penalties may be assessed against the insurer under § 22:658(A)(3). Oubre v. Louisiana Citizens Fair Plan, 09-620 (La. App. 5 Cir. 11/9/10), 53 So.3d 492. I agree with the lower court that "a reasonable interpretation of [La.Rev.Stat. § 22:658(A)(3) and La.Rev.Stat. § 22:1220] indicates that in order to subject an insurer to penalties for failing to initiate loss adjustment in a timely manner, the insurer must be found to have breached the duty of good faith." Oubre, 09-620 at p. 22, 53 So.3d at 505.
Furthermore, although the majority opinion affirmed the lower court's holding that the statute provides for a maximum *1008 amount of $5,000.00 when no damages are proven, I disagree with the opinion to the extent that language therein affirming the district court's imposition of this amount suggests that the penalty to be imposed for any failure to initiate loss adjustment timely will necessarily result in a fine of $5,000.00. As the lower court found, the imposition of this penalty is discretionary, and even then it may be imposed only up to an amount of $5,000.00 if damages are not proven. Thus, in my view, the district court here was required to make a factual determination as to an appropriate penalty in each case, but the district court made no such determination. Thus, I agree with the lower court that summary judgment was not warranted under these circumstances.
Finally, I disagree with the majority's holding that the advancement of the ALEs did not constitute sufficient compliance with the requirement to initiate loss adjustment. The majority focuses on the letter sent by Citizens to its policy holders, rather than the actions of Citizens in attempting to adjust the claims against it. The majority effectively holds that initiation of loss adjustment must either be the setting of an appointment, the physical inspection of the property, or an "evaluation" of the claim. I disagree that initiation of loss adjustment is so narrowly defined. I believe the insurer here undertook reasonable steps to initiate loss adjustment and to resolve the claims against it under the circumstances of this catastrophic loss situation. Accordingly, I would find, under the facts as summarized by the majority, that there was no breach of the statutory requirement to initiate loss adjustment in a timely manner.
NOTES
[1] Both La.Rev.Stat. §§ 22:658 and 22:1220 were renumbered pursuant to La. Acts 2008, No. 415 to La.Rev.Stat. §§ 22:1892 and 22:1973, respectively. However, because the losses sustained herein preceded their renumbering, we will only refer to the statutes by their previous enumerations.
[2] Specifically, Circular LCPIC 2005 07, entitled "Louisiana Citizens Hurricane Reporting Procedures," provided:

Once the adjustor contacts the policy holder and sets and [sic] appointment the evaluation process begins. Both parties review the policy information, go through the verification of damages; both structural and personal property document the cause for the loss and arrange for payment. Adjustors will not make appointments for properties located in areas restricted by civil authorities until the restrictions are lifted. Adjustors will not interpret policy provisions and will not advise the policyholder on procedures outside the scope of the evaluation of the damages. (Emphasis added).
In response to plaintiffs' request for admissions, Citizens admitted it published the circular on its website on or about October 15, 2005, and the circular was a business record of Citizens.
[3] Citizens subsequently supplemented this motion to submit (1) the rendition of a money judgment in the amount of over $92,000,000 violated defendant's due process rights as provided by the Fourteenth Amendment to the Constitution and (2) the judgment constitutes a grossly excessive punishment that is irrational and arbitrary and an unfair deprivation of defendant's property. Citizens moved for leave to file pleadings alleging the unconstitutionality of La.Rev.Stat. § 22:658(A)(3) as applied and to serve these pleadings on the Louisiana Attorney General.
[4] The District Court likewise denied Citizens' motion for leave to file supplemental pleadings. Nevertheless, in open court that same day, the District Court addressed defendant's constitutional claims, stating:

The argument today by Citizens is that or one of the arguments, is that the penalty is excessive; and it talks about [BMW v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996)]. The Court believes that Gore is not applicable in this case. Gore deals with a particular situation. It deals with one individual who was given an excessive award for punitive damages. This is a situation where the award per individual is not excessive.
The problem that Citizens faces is that there are many individuals who this Court found [are] entitled to that award; which is provided by Louisiana Statute.
Counsel for Citizens also argues that there was no consideration of damages. Plaintiff's Counsel cited Sultana Corporation Versus Jewelers Mutual Insurance Company, at 860 So.2d 1112.
The holding in that Court: Justice [Knoll] Wrote the opinion; is that Proof of actual damages is not a prerequisite to the recovery of penalties for insurers breach of Statutory duties of good faith and fair dealing and fair and prompt adjustment of claims.
The second holding was that; Insurers knowing failure to pay a settlement within thirty days is a breach of it's duties, whether or not arbitrary capricious.
Our Supreme Court in that case told us that a consideration of damages is not necessary to reach the penalty provisions of the Statute, a violation of the Statute; and the time period provided by the Statute are sufficient.
[5] On July 1, 2009, Citizens filed a Peremptory Exception of Res Judicata or alternatively, Petition to Contest Constitutionality of La. Rev.Stat. § 22:658(A)(3). The District Court did not rule on the pleading at that time. On July 24, 2009, Citizens' appeal was lodged in the appellate court. By order of that court rendered on December 1, 2009, this matter was removed from the appellate court's docket, and the District Court was ordered to allow defendant to file appropriate pleadings contesting the constitutionality of the state statute and to issue a ruling on these pleadings. On February 17, 2010, the appellate record was supplemented with the transcript of the District Court's hearing on defendant's supplemental pleadings as well as with a copy of the trial court's judgment, denying Citizens' petition to contest constitutionality, and its reasons for judgment, which stated:

Statutes are presumed valid and their constitutionality should be upheld whenever possible. Moore v. RLCC Technologies, Inc., 1995-2621 (La.2/28/96), 668 So.2d 1135. If a statute is susceptible of two interpretations, one of which would render it unconstitutional, or raise grave constitutional concerns, courts must adopt the interpretation of the statute which, without doing violence to its language, will maintain its constitutionality. Hondroulis v. Schuhmacher, 553 So.2d 398, 416-17 (La. 1988). Defendant failed to meet its burden of establishing that no circumstances exist under which La. R.S. 22:658(A)(3) and La. R.S. 22:1220 would be valid. See, City of New Orleans v. La. Assessors' Retirement & Relief Fund, 2005-2548 (La. 10/01/07), 986 So.2d 1, 2-3.
Defendant also challenges the constitutionality of La. R.S. 22:658(A)(3) and La. R.S. 22:1220 as applied by this Court in rendering its judgment of March 26, 2009. Because that judgment is currently on appeal, the constitutionality of the statutes as applied is an issue for the Louisiana Fifth Circuit Court of Appeal to decide.
The parties then filed supplemental briefs on the issues raised by the supplemental record.
[6] In light of its interpretation of the relevant statutory provisions, the appellate court upheld their constitutionality, finding:

where La. R.S. 22:658(A)(3) and La. R.S. 22:1220 are interpreted to require a fact-based judicial determination of the appropriate level of penalty based on the circumstances surrounding each individual claim, no violence is done to the language of the statutes and constitutional safeguards are not violated. As this interpretation of the statute is a reasonable one and maintains its constitutionality, we must adopt this interpretation of the statute. Accordingly, Citizens' failed to meet its heavy burden of proving that there are no circumstances under which these statutes would be valid. We therefore conclude that the trial court did not err in dismissing these constitutional challenges.
Id., at pp. 16-17, 53 So.3d at 501. In the absence of a declaration of unconstitutionality, we defer ruling on this issue at this time.
[7] The appellate court pretermitted all remaining issues except the issues of Citizens' status as an insurer, specifically finding Citizens was an insurer under our law, and the finality of the judgments, finding no abuse of the trial court's discretion in this regard.
[8] Acts 2009, No. 448 amended this section to provide a mechanism to extend the time to respond to claims during an emergency or disaster, providing:

(3) Except in the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim for reasonable medical expenses within fourteen days after notification of loss by the claimant. In the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim within thirty days after notification of loss by the claimant except that the commissioner may promulgate a rule for extending the time period for initiating a loss adjustment for damages arising from a presidentially declared emergency or disaster or a gubernatorially declared emergency or disaster up to an additional thirty days. Thereafter, only one additional extension of the period of time for initiating a loss adjustment may be allowed and must be approved by the Senate Committee on Insurance and the House Committee on Insurance, voting separately. Failure to comply with the provisions of this Paragraph shall subject the insurer to the penalties provided in R.S. 22:1973.
[9] See cf. Sultana Corp. v. Jewelers Mut. Ins. Co., 03-0360, p. 8 (La. 12/3/03), 860 So.2d 1112, 1118 (quoting Midland Risk Ins. Co. v. State Farm Mut. Auto. Ins. Co., 93-1611 (La. App. 3 Cir. 9/21/94), 643 So.2d 242) ("Section 1220(A) legislatively imposes a duty of good faith and fair dealing on insurers. Section 1220(B) enumerates certain acts, which if knowingly committed or performed by an insurer, constitute a breach of its duty of good faith and fair dealing.").
[10] A plain reading of the remaining provisions of La.Rev.Stat. § 22:658 lends further support for this interpretation. In relevant part, La.Rev.Stat. § 22:658 provides:

A. (1) All insurers issuing any type of contract, other than those specified in R.S. 22:656, R.S. 22:657, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest.
(2) All insurers issuing any type of contract, other than those specified in R.S. 22:656, R.S. 22:657, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, shall pay the amount of any third party property damage claim and of any reasonable medical expenses claim due any bona fide third party claimant within thirty days after written agreement of settlement of the claim from any third party claimant.
* * *
(4) All insurers shall make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim.
B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim, as provided in Paragraphs (A)(1) and (4), respectively, or failure to make such payment within thirty days after written agreement or settlement as provided in Paragraph (A)(2), when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of twenty-five percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, or to any of said employees, or in the event a partial payment or tender has been made, twenty-five percent of the difference between the amount paid or tendered and the amount found to be due.
As shown above, La.Rev.Stat. § 22:658(B)(1) explicitly requires a showing of bad faith to subject the insurer to the enumerated penalties for violating its statutory duties under Subsections (A)(1), (A)(2), and (A)(4). Subsection (A)(3) is notably absent from this list, and given this absence, it follows that Subsection (B)(1)'s bad faith requirement does not apply to the duty set forth in Subsection (A)(3).
[11] Note, in Sultana, we expressly pretermitted the issue presently before the Court, explaining: "[b]ecause penalties were not awarded in the trial court, we are not faced with the question of whether Subsection (C) of LA.REV.STAT.ANN. § 22:1220 imposes a minimum penalty." Id., at p. 3, n. 5, 860 So.2d at 1115, n. 5.
[12] See cf. Adams v. Stratton, 02-224, pp. 4-5 (La.App. 5 Cir. 10/16/02), 831 So.2d 290, 292 (holding "[t]he statute clearly provides a mandatory maximum, limiting an award to an amount of twice the damages or $5000, whichever is greater"; finding "no mandatory minimum penalty amount in the statute"), writ denied, 02-2792 (La.2/7/03), 836 So.2d 101; Harrington v. Cato Corp., 32,055, p. 4 (La.App. 2 Cir. 6/16/99), 740 So.2d 732, 735 (holding "[u]nder this scheme, a plaintiff may not recover more than $5,000.00 unless her actual damages are greater than $2,500.00. The statute has no minimum penalty provision."); Hall v. State Farm Mut. Auto. Ins. Co., 04-867, pp. 7-8 (La.App. 3 Cir. 5/31/95), 658 So.2d 204, 208 (holding "[i]f there are no damages proven as a result of the breach itself, then the maximum amount that can be awarded is $5000.00 in penalties")(citing Robichaux v. Jackson National Life Ins. Co., 821 F.Supp. 429 (E.D.La.1993); Midland, supra).
[13] La.Code Evid. art. 1006 provides:

The contents of otherwise admissible voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court.
[14] Interestingly, we note Citizens submitted its own paper spreadsheet alleging typographical errors in 66 claims summaries, but of those 66, only seven errors would inure to Citizens' benefit, as all other errors still reflected untimely initiation. Moreover, unlike the spreadsheets submitted by plaintiffs, Citizens' spreadsheet does not contain any links to the documentation from which its information was derived and is, therefore, insufficient to rebut plaintiffs' documented files or set forth specific facts showing a genuine issue for trial of the 18,573 claims. See La.Code Civ. Proc. art. 967(B). Likewise, Citizens' exhibit that professes to be a handwritten contact sheet from an AIG adjuster, which was submitted to the court months after discovery had concluded and after Citizens had sworn there were no other records except those contained in the claims files, is also insufficient to rebut plaintiffs' documented records or set forth specific facts showing a genuine issue for trial of the 18,573 claims. See La.Code Civ. Proc. art. 967(B). We further note it is not clear what exactly this document purports to show besides a list of names and numbers on dated sheets. Finally, we note, as plaintiffs properly advanced, these documents and their accompanying affidavits were not timely filed in accordance with the rules set forth in La.Code Civ. Proc. art. 966, see District Court Rule 9.9. Thus, the District Court was well within its gate-keeping discretion in not considering these filings. See Buggage v. Volks Constructors, 06-0175 (La.5/5/06), 928 So.2d 536, 536 ("The time limitation established by La. C.C.P. art. 966(B) for the serving of affidavits in opposition to a motion for summary judgment is mandatory; affidavits not timely filed can be ruled inadmissible and properly excluded by the trial court.").
[15] Citizens did not seek review of the appellate court's affirmation of the trial court's finding regarding this issue. Therefore, the ruling on this issue is now final and not properly before this Court.
[16] It is undisputed the record testimony of Citizens' director of litigation establishes that, based upon the magnitude of damage, Citizens made a decision to pre-print approximately 70,000 checks for $1,500 on September 17, 2005. Those checks were advances based on the loss of use provision in the policy. They were printed, and then Citizens set up a "check spot" where people could come, provide their driver's license, sign a form stating they understood they were getting an advance, and were given a check "right there on the spot." This was an admitted "attempt to get money into the hands of people as close as possible after the storm." As Citizens' FedEx receipts show, some checks were mailed as well. Some checks were also apparently issued by AIG.