CONERY, J.,
dissents for the following reasons.
11 Co-defendants, Robyn B. Little Davis and Carol Noland Saltzman were tried together and convicted of second degree murder and sentenced to life imprisonment based on controversial circumstantial evidence. In separate but essentially identical opinions, the majority chose to affirm each of their convictions and sentences. I respectfully dissent.
Louisiana Code of Criminal Procedure Article 790 mandates that after jury selection has been completed, “the jurors shall then be sworn together to try the case[.]” (Emphasis added). “Shall” means that it is mandatory. “Then” means right away, not five and a half months later.
In Rhymes v. Rhymes, 13-0823 (La.10/15/13), 125 So.3d 377, our supreme court again reiterated the well-established rules of statutory construction:
In accord with these rules, the interpretation of any statutory provision starts with the language itself. Oubre v. Louisiana Citizens Fair Plan, 11-0097, p. 11 (La.12/16/11), 79 So.3d 987, 997. When the provision is clear and unambiguous and its application does not lead to absurd consequences, its language must be given effect, and its provisions must be construed so as to give effect to the purpose indicated by a fair interpretation of the language used. La. Civ.Code art. 9; La.Rev.Stat. § 1:4; In re Clegg, 10-0323, p. 20 (La.7/6/10), 41 So.3d 1141, 1154. Unequivocal provisions are not subject to judicial construction |2and should be applied by giving words their generally understood meaning. La. Civ. Code art. 11; see also Snowton v. Sewerage and Water Bd., 08-0399, pp. 5-6 (La.3/17/09), 6 So.3d 164, 168.
Words and phrases must be read with their context and construed according to the common and approved usage of the language. La. Civ.Code art. 11; La. Rev.Stat. § 1:3. The word “shall” is mandatory and the word “may” is permissive. La.Rev.Stat. § 1:3; Oubre, 11-0097 at 12, 79 So.3d at 997. Every word, sentence, or provision in a law is presumed to be intended to serve some useful purpose, that some effect is given to each such provision, and that no unnecessary words or provisions were employed. Colvin v. Louisiana Patient’s Compensation Fund Oversight Bd., 06-1104, p. 6 (La.1/17/07), 947 So.2d 15, 19; Moss v. State, 05-1963, p. 15 (La.4/4/06), 925 So.2d 1185, 1196. Consequently, courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause, or word as meaningless and surplusage if a construction giving force to and preserving all words can legitimately be found. Oubre, 11-0097 at 12, 79 So.3d at 997. With this understanding, we turn now to the relevant Civil Code provisions.
In this case, twelve jurors and two alternates were selected and individually sworn pursuant to La.Code Crim.P. art. 786. Both the State and defendants accepted each juror and alternate and had no additional challenges under La.Code Crim.P. art. 795. After selecting and individually swearing all the jurors, defendants requested that the jury be sworn as a panel. *603 Instead, the court recessed until the next morning at the request of the prosecution and did not swear in the jury as a panel under La.Code Crim.P. art. 790. The next day, the defendants again moved that the jury be sworn as a panel. The State orally moved for a continuance based on the lead prosecutor’s alleged illness and inability to proceed. The court granted the motion, continued the case without date, and discharged the jury. Defendants objected and proposed a short weekend recess in lieu of a continuance, which proposal was denied by the trial court. The trial court then allowed the prosecutor to supplement the record with a written, albeit untimely, motion for continuance as required by La. Code Crim.P. art. 707.
|sNot only was the State’s motion for continuance untimely and not in proper form under La.Code Crim.P. art. 707, La. Code Crim.P. art. 708 is clear that a continuance may not be granted after a jury trial has commenced. State v. Hedgspeth, 42-921 (La.App. 2 Cir. 1/9/08), 974 So.2d 150. Under La.Code Crim.P. art. 761, a jury trial commences after the first juror is sworn. Clearly, the continuance granted in this case was improper, as all twelve jurors and two alternates had been individually sworn pursuant to La.Code Crim.P. art 786.
The majority cites State v. Tuckson, 00-1408 (La.App. 3 Cir. 2/28/01), 781 So.2d 807, for the proposition that the trial judge has some flexibility as to when to swear all the jurors together as a completed panel under La.Code Crim.P. art. 790. The court found that a one day delay in that case was not an abuse of discretion. It may be reasonably argued that the word “then” following the word “shall” may give a trial judge some very limited flexibility under La. Code Crim.P. art. 790. The word “immediately” was not used. In some circumstances, then, it could be argued that a weekend recess as requested by defendants in this case may have been in order so that the court could better determine whether the prosecutor could proceed, or whether someone else in his office could try the case. Here, the trial court instead denied the defense request for a weekend recess, granted the State a continuance without date, and dismissed the jury, all over defendants’ objections. It was error for the trial judge to do so. La.Code Crim.P arts. 708; 790; Hedgspeth, 974 So.2d 150.
The question then becomes whether the defendant was prejudiced in this case. It is undisputed that the trial judge refused to immediately swear in the jury panel under La.Code Crim.P. art. 790 after all jurors were individually selected, as requested by defendant and in direct contravention of the mandatory wording 1/‘shall then” in the article. He likewise did not do so on the following day. Double jeopardy would have attached under La.Code Crim.P. art. 592 had the panel been sworn. In Tuckson, no prejudice was found by a one day delay in swearing the jury as mandated by La.Code Crim.P. art. 790. The conviction was affirmed.
In this particular case, the facts are different. During jury selection it was discovered that the State’s lead crime scene and forensic investigator, Officer Baumgarten, had a conflict for the upcoming week of the trial. A highly unusual recess in jury selection was called by the court, and the State was allowed to “perpetuate” her testimony by video in open court before the judge, but outside the presence of the prospective jurors. The State intended to offer the video of Officer Baumgarten’s testimony at trial in lieu of her live testimony. The defendants objected, claiming that such a procedure violated their right to confront this key witness live before the fact finder, the jury. *604 The trial judge overruled the objection. Twenty-four items of evidence were introduced into evidence during Officer Baum-garteris testimony.
Later, after the continuance was granted, the State was allowed to withdraw some of the previously introduced evidence by ex-parte motion. When defense counsel learned of the State’s request, he requested that the trial court conduct a contradictory hearing and the court agreed. Following the hearing, the trial court allowed the State to withdraw all of the evidence introduced in connection with Officer Baumgarten’s video testimony. In effect, the State was allowed to start all over, allegedly plugging the holes in its case that had been discovered when defendants had vigorously cross examined Officer Baumgarten during her “perpetuated” video testimony.
Defendant argues that she was unfairly prejudiced by this procedure because [5the State had time to correct some of the weaknesses in its case, “shore up” Officer Baumgarten’s testimony, and “plug the holes” in its case. According to Defendant, Officer Baumgarten’s testimony at the trial was materially and significantly different than the testimony she offered on video. The video was not introduced in evidence. In fact, at the trial of this case, the trial judge refused to allow the defendant to mention, comment upon, or use Officer Baumgarten’s testimony from her perpetrated video testimony except for direct impeachment, and then with no explanation of the circumstances under which the prior statement had been made. Here, again, Defendant’s Sixth Amendment Right to confrontation was arguably curtailed by the trial court.
Perhaps most importantly, the State was allowed to obtain additional DNA tests on evidence that had been collected at the scene but not previously submitted for testing. One such DNA test revealed unknown male DNA evidence found under the victim’s fingernails, a fact not disclosed to the defendant until the second day of the rescheduled trial, arguably in direct violation of defendant’s right to be promptly notified of potentially exculpatory evidence.
LeAnne Suchanek, a DNA analyst, testified as an expert at the trial on behalf of the State and stated: “These particular fingernails had some blood on them.” Ms. Suchanek admitted that even though she admitted that she did not have a DNA sample from the victim to compare, she nevertheless opined that the blood and material found on and under the victim’s fingernails was from the victim himself, and not a third party.
Most importantly, the defendants were not given the additional DNA test results prior to the trial and had no opportunity to conduct its own tests or even meaningfully challenge Ms. Suchanek’s opinion. In all, thirty-two additional items [fiof evidence were tested by the State after the continuance and before the second trial.
The State was also allowed to add and call another crime scene expert not previously listed who, over defendant’s objections, offered testimony on ballistics, a subject matter about which he was not qualified to testify as an expert. The State further had an opportunity to interview several defense witnesses disclosed by defendant during voir dire, and had the opportunity to listen to all of defense counsels’ voir dire, hence obtaining a better understanding of the defense strategy.
Further the State had more time to prepare its key witness, the FBI “expert” on cell phone site analysis, whose critical testimony was used by the State to attempt to tie this purely circumstantial case together. As previously indicated, and *605 perhaps equally important, the State had more time to strengthen Officer Baumgar-ten’s testimony, with no ability on the part of Defendant to introduce her earlier video testimony to demonstrate to the jury her previous demeanor, manner of testifying, and content of her previous testimony.
By not swearing the jury as a panel immediately after all were selected as mandated by La.Code Crim.P. art. 790, and then granting a continuance in violation of La.Code Crim.P. arts. 707 and 708, the defendants obviously faced a completely different trial than they would have had the continuance been denied. The trial court committed legal error and Defendant was prejudiced.
In State v. Fisher, 168 La. 584, 122 So. 858 (1929) (quoting from State v. Conda, 156 La. 679, 101 So. 19 (1924)), the supreme court provided guidance on the issue of prejudice that is timely today: “It is frequently very difficult to draw the line between error which is harmful and error which is not. Where doubt is present, the accused should receive the benefit.”
17A fortiori, considering all the circumstances of this case, the clear violation of La.Code Crim.P. art. 790 prejudiced Defendant’s right to a fair trial.
Conclusion
Finding error and prejudice in Defendant’s first assignment of error, discussion of the remaining assignments of error is pretermitted. I find that under the unusual circumstances of this case, Defendant has shown a clear error of law and sufficient prejudice to warrant a new trial.
I would, therefore, reverse the conviction and remand the case for a new trial.