PER CURIAM.*
hAt issue is the appropriateness of summary judgment in a case where a car dealership, not acting as the direct seller to an injured plaintiff, is alleged to owe a duty to warn about the dangers of first generation airbag deployment in a vehicle manufactured prior to the national campaign that promoted revised warning labels. Specifically, the plaintiff purchased the 1995 Toyota Corolla in question from A-Quality Auto Sales, LLC, (“A-Quality”), a used car dealership that immediately purchased the vehicle from Lakeside Toyota after a trade-in. Several months after the plaintiffs acquisition, the plaintiff was involved in an automobile accident wherein she suffered severe injuries. Among other allegations, the plaintiff alleged that Lakeside Toyota failed to attach a revised airbag warning label to her vehicle which would have prevented her injuries.
Lakeside Toyota filed a motion for summary judgment, claiming it owed no duty to warn the plaintiff. The trial court agreed and granted Lakeside Toyota’s 12motion for summary judgment.
The majority of the court of appeal reversed the grant of summary judgment. It noted that absence of privity of contract between the dealership and the plaintiff did not preclude a finding that a duty to warn was owed. La.Civ.Code art. 2315 and Media Production Consultants, Inc. v. Mercedes-Benz of North America, Inc., 262 La. 80, 262 So.2d 377 (1972). Additionally, the majority engaged in a duty-risk analysis and found Lakeside Toyota’s failure to warn its immediate buyer, A-Quality, of the danger was easily associated to the harm suffered by the plaintiff. It emphasized the fact that Lakeside Toyota had previously serviced this exact vehicle regularly and, accordingly, found that Lakeside Toyota shared with the immediate seller and the manufacturer the responsibilities to warn the plaintiff, as a foreseeable future user, that the vehicle at issue did not contain the revised warning label relative to the airbag. Finding that a duty could be owed, it analyzed the remaining duty-risk factors for the limited purpose of determining whether genuine issues of material fact existed. Ultimately, the court of appeal found there were remaining issues of fact that required the matter to proceed to trial and precluded the availability of summary judgment.
Judge Landrieu dissented with reasons, finding there was no proof of a defect and, thus, nothing about which to warn. Observing the fact that the plaintiffs vehicle complied with the federal standards for vehicles manufactured at that time, Judge Landrieu opined that the cause of action could only conceivably be based upon the Louisiana Products Liability Act and, in the absence of a dangerous or defective product, no duty to warn could be imposed.
Judge Lombard also dissented, characterizing the majority opinion as creating “an expansive duty to warn a third-party purchaser” of potential dangers.
Lakeside Toyota filed the instant writ application, wherein it contends that *714 the |sappellate decision vastly broadens the potential liability of an automobile dealer even in its role as the non-manufacturing and non-selling entity. Further, Lakeside Toyota asserts the existing warning label was not inadequate or defective. Importantly, and as noted by Judge Landrieu, the replacement warning label which was required and promoted by a federal rule was only applicable to vehicles manufactured after 1997—not the plaintiffs 1995 Corolla. Accordingly, Lakeside Toyota argues there is no duty imposed by federal law in this matter. Regarding liability under state law, Lakeside Toyota asserts without proof of a defective condition or evidence of inadequacy, it owed no duty to warn the plaintiff of issues related to first generation airbags.
We agree with Lakeside Toyota and find summary judgment was appropriate for the following reasons. First, we note that it was uncontested that the federal rule promulgated by the National Highway Traffic Safety Administration did not require manufacturers or dealerships to install the revised warning labels in vehicles that were manufactured prior to February 1997. Because the vehicle at issue was manufactured prior to this date, no legal duty arose pursuant to this federal regulatory action.
We next analyze whether a duty could have arisen under the laws of Louisiana, in particular, the Louisiana Products Liability Act. La.R.S. 9:2800 et seq.
Insofar as Lakeside Toyota is not the manufacturer of the 1995 Corolla, any responsibility for tort damages it may have would necessarily arise under its role as a non-manufacturing seller. To find liability in this context, three requirements must be met: First, the product sold by Lakeside Toyota must be defective. Second, Lakeside Toyota must have had actual or constructive knowledge that the product it sold was defective. Lastly, Lakeside Toyota must have failed to declare the defect. Reaux v. Deep South Equipment Co., 02-1571, pp. 5-6 (La.App. 4 Cir. 2/5/08), 840 So.2d 20, 23-24. Further, because Lakeside Toyota did not sell the vehicle directly to the plaintiff, it must be demonstrated that the plaintiff falls within the ambit of those persons to whom the seller owes a duty. Gammill v. Invacare Corp., 08-0833 (La.App. 4 Cir. 12/17/08), 2 So.3d 557, 559.
All elements must be proven to succeed on this claim; therefore, a lack of factual support for just one element renders summary judgment in favor of Lakeside Toyota appropriate. We find the plaintiffs failed to produce factual evidence of a defect and therefore cannot prevail on the motion. Under the Louisiana Products Liability Act, “the manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity.” La.R.S. 2800.54.(A). Louisiana Revised Statutes 2800.54(B) elaborates on the definition of “unreasonably dangerous”:
B. A product is unreasonably dangerous if and only if:
(1) The product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;
(2) The product is unreasonably dangerous in design as provided in R.S. 9:2800.56;
(3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57; or
(4) The product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer *715 about the product as provided in R.S. 9:2800.58.
Because the plaintiffs admitted in their pleadings that, at the time of the accident, the airbags functioned as designed, the only possible argument that a defect existed is | abased in the inadequate warning category. La.R.S. 2800.54(B)(3). A product is “unreasonably dangerous” by virtue of an inadequate warning “if at the time the product left its manufacturer’s control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.” La.R.S. 9:2800.57(A).
We find the plaintiffs produced no evidentiary support to show that the lack of the 1997 revised airbag warning labels in the plaintiffs 1995 vehicle rendered the car unreasonably dangerous under the cited definition. As noted by Judge Lan-drieu in her dissent, “the mere fact that revised airbag warning labels were developed and were required in newly manufactured vehicles does not render older vehicles with first generation airbag and original caution labels defective.”
Because we find proof of a defect was lacking and we need only point to the absence of one of the required elements, we are not required to analyze the remaining factors. However, we make the following observations to further support our holding. As this court stated in Meany v. Meany, 94-0251, p. 6 (La.7/5/94), 639 So.2d 229, 233, certain policy considerations are to be taken into account in analyzing whether a duty is owed:
In determining whether to impose a duty in a particular situation, the court may consider various moral, social, and economic factors, including whether the imposition of a duty would result in an unmanageable flow of litigation; the ease of association between the plaintiffs harm and the defendant’s conduct; the economic impact on society as well as the economic impact on similarly situated parties; the nature of the defendant’s activity; moral considerations, particularly victim fault; and precedent as well as the direction in which society and its institutions are evolving.
The majority of the court of appeal found an ease of association between the plaintiffs injuries and Lakeside Toyota’s conduct, emphasizing the fact that Lakeside | fiToyota had regularly serviced the vehicle when it was owned by the previous owner. Both parties concede, however, that Lakeside Toyota never worked on the mechanism at issue, the airbags. The majority of the court of appeal, though, found this to be non-dispositive, relying instead on the broader obligation of Lakeside Toyota, as the entity that serviced the vehicle, to promote safe transportation. While we acknowledge a general duty to advance safe travel and again note that duties may be owed in the absence of privity of contract, we find the instant facts are too attenuated to conclude an ease of association is present.
Lastly, as directed by Meany, 639 So.2d 229, we considered the policy concerns, and we find that permitting these facts to serve as the basis for a finding that a duty exists expands too greatly the potential liability of Louisiana automobile dealerships and the provisions of the Louisiana Products Liability Act. Accordingly, we reverse the court of appeal and reinstate the grant of summary judgment in favor of Lakeside Toyota.
REVERSED AND RENDERED.
KNOLL, J., dissents with written reasons.

 Chief Justice Johnson recused