# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 20-233

VICTOR BRUNO

VERSUS

BRD US, INC., ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2015007
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## VAN H. KYZAR
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion (S), Van H. Kyzar, and Candyce G. Perret, Judges.

**REVERSED AND REMANDED.**

Patrick Daniel
Rachel Deckelmann
Daniel & Associates, LLC
7941 Katy Freeway Suite 791
Houston, TX 77024
(713) 999-6666
COUNSEL FOR PLAINTIFF/APPELLANT:
    Victor Bruno

Douglas Kent Williams
Chris D. Billings
Jordan L. Faircloth
Breazeale, Sasche & Wilson
P. O. Box 3197
Baton Rouge, LA 70821-3197
(225) 381-8032
COUNSEL FOR DEFENDANT/APPELLEE:
    Courtesy Automotive Group, Inc.
    Courtesy Lincoln Sales Lafayette,LLC

Michael J. Remondet, Jr.
Jeansonne & Remondet
P.O Box 91530
Lafayette, LA 70509
(337) 237-4370
COUNSEL FOR OTHER DEFENDANT:
    LMS Sports, LLC
    Dean Richard Enterprises, Inc.

Scott F. Higgins
LaBorde Earles
P. O. Box 80098
Lafayette, LA 70598-0098
(337) 261-2617
COUNSEL FOR OTHER DEFENDANT:
    LMS Sports, LLC
    Dean Richard Enterprises, Inc.

Linda A. Hewlett
Duplass, Zwain, Bourgeois
3838 N. Causeway Blvd, #2900
Metairie, LA 70002
(504) 832-3700
COUNSEL FOR OTHER DEFENDANT:
    Bombardier Recreational Products,Inc.

**KYZAR, Judge.**

Plaintiff, Victor Bruno, appeals the granting of summary judgment in favor of Defendants, Courtesy Automotive Group, Inc. and Courtesy Lincoln Sales Lafayette, LLC dismissing Plaintiff's suit seeking damages for injuries allegedly incurred as the result of the purchase of a defective off-road vehicle from Defendants. Plaintiff also appeals the granting of a motion to strike portions of his affidavit in opposition to Defendants' motion for summary judgment. For the reasons assigned, we reverse the granting of Defendants' motion for summary judgment, and remand for further proceedings.

### FACTS AND PROCEDURAL HISTORY

On or about January 8, 2014, Plaintiff purchased a Can Am Commander XT 1000 side-by-side off-road vehicle in a transaction conducted through Courtesy Automotive Group, Inc. and Courtesy Lincoln Sales Lafayette, LLC (Courtesy). The uncontested facts establish that the used vehicle was sold by Eric Simon[1] to Courtesy on January 8, 2014, then immediately sold by Courtesy to Plaintiff, Mr. Bruno, the same day. Mr. Simon was an employee of Courtesy and the brother-in-law of the general manager of the dealership, Don Hargroder, Jr. Plaintiff, Victor Bruno, was a friend and/or acquaintance of Mr. Hargroder. Mr. Simon had originally purchased the vehicle from Dean Richard Enterprises, Inc. a/k/a Lafayette Power Sports, a dealer of Can Am vehicles.

According to the allegations of Plaintiff's suit, on or about January 12, 2014, Plaintiff took his vehicle off-roading for the first time. He was wearing his seatbelt and had engaged safety mechanisms when the vehicle rolled over, his seatbelt failed to secure him, and the latches holding the seat in the vehicle failed. Plaintiff and the

---

[1] Eric Simon is also referred to in the record and pleadings as Eric Simone. For consistency, we reference the former spelling.

seat he sat in were both thrown from the vehicle. Plaintiff was crushed under the roll bar, sustaining injuries.

Plaintiff claimed initially that the accident occurred and was caused through the proximate negligence and/or fault of the manufacturer of the vehicle, BRP US, Inc., Dean Richard Enterprises, Inc. a/k/a Lafayette Power Sports, as the initial seller, and Courtesy, as the retailer that sold the vehicle to Plaintiff. He claimed that the defendants were liable as the vehicle was unreasonably dangerous in construction or composition, unreasonably dangerous in design, unreasonably dangerous because of inadequate warnings, and unreasonably dangerous because of nonconformity to express warranty. He further alleged the defendants were liable for unfairly and deceptively selling this product to consumers. The original petition further asserted that the accident was caused through the proximate negligence and/or fault of the manufacturer and retailer, in failing to properly service the seat and seatbelt, in failing to advise Plaintiff of proper maintenance of the vehicle, in failing to advise Plaintiff of loose seat latches, and in failing to ensure the seat latches and the seat belts were functioning properly.

Ultimately, Plaintiff dismissed the manufacturer from the lawsuit after it was discovered that the vehicle had been modified after it left the factory. Thereafter, Courtesy moved for summary judgment on June 11, 2019. In support thereof, Courtesy filed as exhibits the petition of Plaintiff and the deposition of Don Hargroder, Jr., also dated June 11, 2019. In its motion, Courtesy argued that Mr. Bruno cannot support a cause of action against it and, therefore, requested that the trial court grant summary judgment in Courtesy's favor dismissing Plaintiff's claims. In addition to the motion for summary judgment, Courtesy challenged the reply affidavit of Mr. Bruno, submitted in opposition to the motion for summary judgment, asserting that portions thereof were conclusory and not based on personal knowledge.

2

At the conclusion of the hearing, the trial court granted Courtesy's motion to compel statements regarding supposed steroid use of Mr. Bruno, granted Courtesy's motion to strike from consideration portions of Plaintiff's affidavit, specifically paragraphs 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 17, 18, 19, 24, 27, 28, 30, 31, 32, 33, 34, 35, 36, 37, 40, 42, 43, 46, 47, 51, 52, 55, 58 59, 60, 64, 68, 71, 72, 73, 75, and 76 of the affidavit, and granted Courtesy's Motion for Summary Judgment, dismissing Plaintiff's claims in this matter against Courtesy with prejudice, at Plaintiff's cost. Plaintiff appeals, asserting the following assignments of error:

1. The Trial Court erred by weighing the evidence and/or making credibility determinations resulting in it striking from Appellant's affidavit numerous statements that Appellant made from his personal knowledge.

2. The Trial Court erred by concluding that no genuine issues of material fact exist regarding whether Appellee owes a legal duty to Appellant.

3. The Trial Court erred by declaring that expert testimony is required to establish the existence of a defect, and by failing to find that due to the actions and inactions of Appellee, the Commander Vehicle was defective at and prior to the time Appellee sold the vehicle to Appellant.

4. The Trial Court erred by not finding that genuine issues of material fact exist regarding whether and to what extent Appellant knew, prior to purchasing the vehicle from Appellee, about the potential for vehicle roll-over.

5. The Trial Court erred by refusing to consider Appellant's testimony regarding cause-in-fact of the subject accident.

6. The Trial Court erred by concluding that Appellant has not pled a Louisiana Uniform Trade Practices and Consumer Protection Act (LUTPA) claim.

## DISCUSSION

### *The Summary Judgment*

After granting Defendant's motion to strike portions of Plaintiff's affidavit in opposition, the trial court granted Courtesy's motion for summary judgment. We

first address Plaintiff's claim that the trial court erred in granting summary judgment dismissing his claims against Courtesy, as a reversal of that judgment notwithstanding the ruling on the motion to strike renders that issue moot.

A summary judgment is a procedural device properly used when there is no genuine issue of material fact. *Murphy v. Savannah*, 18-991 (La. 5/8/19), 282 So.3d 1034; La.Code Civ.P. art. 966. Appellate courts review summary judgments *de novo* using the same criteria that governs the trial court's determination of whether summary judgment is appropriate, i.e., whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Wright v. La. Power & Light*, 06-1181 (La. 3/9/07), 951 So.2d 1058; La.Code Civ.P. art. 966(A)(3).

A material fact is one that "potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute." *Hines v. Garrett*, 04-806, p. 1 (La. 6/25/04), 876 So.2d 764, 765 (per curiam). "A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate." *Smitko v. Gulf S. Shrimp, Inc.*, 11-2566, p. 8 (La. 7/2/12), 94 So.3d 750, 755.

Although the mover bears the burden of proof for the motion, if that party will not bear the burden of proof at trial, then it need only point out to the trial court "the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." La.Code Civ.P. art. 966(D)(1). Once this occurs, the burden shifts to "the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id.*

4

Plaintiff's second assignment of error argues that the trial court erred by concluding that no genuine issues of material fact exist regarding whether Courtesy, as the seller of the ATV, owes a legal duty to him. Alleged error number three relates to whether there is a material issue of fact as to the existence of a defect in the vehicle and whether expert testimony was necessary to establish such. Similarly, in his fourth assignment of error, he argues that the trial court erred by not finding that genuine issues of material fact exist regarding whether and to what extent Plaintiff knew, prior to purchasing the vehicle from Courtesy, about the potential for vehicle roll-over. As these issues are interrelated to the granting of summary judgment, we address them together.

To find tort liability for a non-manufacturer seller of a product such as a vehicle requires proof of three elements. *Alexander v. Toyota Motor Sales, U.S.A.*, 13-756 (La. 9/27/13), 123 So.3d 712. First, the product sold must be defective. Second, the seller must have had actual or constructive knowledge that the product it sold was defective. Lastly, the seller must have failed to declare the defect. *Id.* (citing *Reaux v. Deep S. Equip. Co.*, 02-1571 (La.App. 4 Cir. 2/5/03), 840 So.2d 20). All of the elements must be proven to succeed in such a claim and, therefore, a lack of factual support for just one element renders summary judgment in favor of the seller appropriate. *Id.*

> A non-manufacturer/seller in some instances has a duty to warn a purchaser of defects and/or dangerous propensities in the products he sells. In the case of a defective product, i.e., one which is unreasonably dangerous in normal use, the non-manufacturer/seller can be held liable for damages in tort only if he knew or should have known that the product was defective and failed to declare the defect to the purchaser. *Hopper v. Crown*, 555 So.2d 46, 48 (La.App. 1st Cir.1989), *reversed on other grounds*, 558 So.2d 1117 (La.1990); *see also, Thomasson v. A.K. Durnin Chrysler–Plymouth, Inc.*, 399 So.2d 1205, 1208 (La.App. 1st Cir.1981). However, a non-manufacturer seller is not required to inspect the product prior to sale to determine the possibility of inherent vices or defects. *Nelton v. Astro-Lounger Mfg. Co., Inc.*, 542 So.2d 128, 131 (La.App. 1st Cir.1989); *Harris v. Atlanta Stove Works, Inc.*, 428

5

So.2d 1040, 1043 (La.App. 1st Cir.), *writ denied*, 434 So.2d 1106 (La.1983). Under some circumstances, a non-manufacturer vendor who holds the product out to the public as its own may be classified as a "professional vendor" and may have the same responsibility as a manufacturer. *Chappuis v. Sears Roebuck & Co.*, 358 So.2d 926, 930 (La.1978).

*Adams v. Owens-Corning Fiberglas Corp.*, 04-1589, pp. 6-7 (La.App. 1 Cir. 9/23/05), 923 So.2d 118, 123, *writ denied*, 05-2318 (La. 3/10/06), 925 So.2d 519.

In support of its motion, Courtesy introduced the affidavit of Don Hargroder, Jr., Courtesy's General Manager. He states therein that at the time of the transaction, done as a favor or "courtesy" for Mr. Bruno, a personal friend, Courtesy had no knowledge of any defect or vice in the Can Am vehicle, that this was not the type of vehicle normally sold by the automotive dealership, and, as a result, it did not inspect, repair, or represent the vehicle as one normally sold thereby. He asserted that Courtesy did not change any parts on the vehicle before the transaction in question. Accordingly, Courtesy did set forth evidence establishing the absence of factual support for one or more elements essential to Plaintiff's claim, such that the burden shifts to Mr. Bruno to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

In opposition to the motion for summary judgment, Mr. Bruno filed his own affidavit, as well as the deposition testimony of Mr. Hargroder. Part and parcel of that deposition transcript was an invoice for the purchase and installation of tires on the Can Am vehicle in question performed by G & H Tire that was billed to Courtesy. The invoice was dated February 20, 2013, almost a year before the transaction between Courtesy and Mr. Bruno. In his deposition testimony, Mr. Hargroder asserted that as Mr. Simon worked for Courtesy and owned the Can Am, he had the tires and wheels changed by G & H, a company that the dealership does business with, and had G & H invoice the dealership. He thinks that Mr. Simon would later

6

have reimbursed Courtesy for the expense, though he was uncertain as to whether this was actually done. It is unclear from the record who actually paid for the purchase and installation of the tires on the Can Am vehicle.

Plaintiff also introduced the deposition testimony of Mr. Simon. Therein, he testified that the Can Am was purchased new from Lafayette Powersports approximately a year before the accident involving Mr. Bruno. After the purchase, Mr. Simon had a stereo installed and changed the wheels and tires to a different size than the original tires sold with the vehicle. He later sold the vehicle to Courtesy and in turn Courtesy sold it to Mr. Bruno. He does not know anything about the details of the sale to Mr. Bruno. He did recall that he had the original twelve-inch rims and corresponding tires that came with the vehicle from the manufacturer replaced with fourteen-inch rims and tires. The original tires were three ply and the replacement tires were six ply tires. He later recalled purchasing the new tires and wheels from TMW Off-road in January 2013 and had the tires and wheels installed by G & H Tire located in Maurice, Louisiana. He did not recall whether the particular tires and wheels he had installed on the vehicle were authorized or approved by the manufacturer.

Mr. Bruno also attached the deposition testimony of Seth Richard, now Vice President of Lafayette Powersports, as an exhibit to his opposition to the motion for summary judgment. According to that testimony, the Can Am vehicle was received from the factory and sold to Mr. Simon on December 19, 2012. Mr. Richard was Service Manager in 2012 when this vehicle was sold to Mr. Simon. He explained that after a vehicle such as this Can Am arrives at the dealership, portions or parts have to be installed and assembled onto the vehicle, such as the roll cage system, suspension, etc. One part that must be installed by the dealer is a portion of the seat belt system that attaches to the roll bar. The tensor mechanism of the seat belt,

7

however, is already installed on the vehicle, as it came from the factory, and as such Lafayette Powersports did not install that piece. Other than these necessary attachments, Lafayette Powersports purportedly did not modify the vehicle in any way, except to install a factory purchased stereo.

The factory-issued tires that are supposed to be on the Can Am vehicle are Maxxis Bighorn 2.0. These are not the tires that were installed on the Can Am vehicle at the time of the incident. Mr. Richard testified that Lafayette Powersports has no record of tires or wheels being changed on this vehicle at any time. He testified that the vehicle would not have been sold to Mr. Simon or delivered unless the seat latch was working properly, which is the mechanism that secures the seat to the vehicle frame. Mr. Richard did note, however, that he personally would not operate the vehicle without reading the safety manual. He asserts there is a sticker on the vehicle so saying. In his deposition, Mr. Richard was asked specifically about modifications to the vehicle, including increasing the tire and wheel size, as follows:

Q       Suppose somebody wants to change the tires on it, would that be recommended to go through Lafayette Power Sports?

A       We do offer that as a service, yes, but I would have records of that for this particular vehicle.

Q       Well, here's my question: I'm not asking you whether or not you have records, I'm asking you is it advisable for any modifications to this vehicle be done by Lafayette Power Sports?

A       If the customer wanted to do any kind of, you know -- any kind of work, they can ask and if we're willing to do it then, yes, but if it's a modification we're not comfortable doing then, no. If it's a safety related modification then no.

Q       Not all tires are suitable for this subject vehicle; is that correct?

A       You could say that, yeah.

Q       Does[sic] the tires affect the stability of the subject vehicle?

A       In certain cases, yes.

8

In opposition to the motion, Plaintiff also introduced the owner's manual for the Can Am vehicle, issued by the manufacturer. It states clearly that oversized tires are not to be installed, as it can increase the likelihood of a vehicle roll-over accident. Further, Plaintiff attached and introduced the policies and procedures of Courtesy, which state that the dealership undertakes to inspect used vehicles prior to sale and that it will not sell vehicles with tires installed that are not factory approved.

Our review of the evidence in support of and in opposition to the motion for summary judgment points to issues of material fact in dispute concerning the actual or constructive knowledge of Courtesy, through its employee Mr. Simon and through the invoice for the tire installation made out to Courtesy. Mr. Simon was the previous owner of the Can Am vehicle before he sold it to his employer, Courtesy, which acted as an intermediary in the sale to Mr. Bruno later that same day. Clearly, Mr. Simon, the only previous owner of the Can Am vehicle, was aware it had been modified by the installation of differently sized tires and wheels. Notably, when the tires and wheels were replaced during Mr. Simon's ownership, the invoice therefor was made out in the name of Courtesy.

Courtesy argues that it acted only to facilitate the transaction as a "courtesy"; however, it cannot avoid the consequences of its involvement when its own employee had specialized knowledge of the vehicle, its employee had previously invoiced the replacement wheels and tires to Courtesy, notwithstanding that these replacement wheels and tires were contraindicated by the manufacturer's warnings, and Courtesy chose voluntarily to act as the seller of the vehicle. Further, Courtesy had internal policies in place at the time that it was to inspect vehicles prior to sale and that it would not sell vehicles with oversized tires. This policy was not followed in this instance. Mr. Hargroder asserts this is because the Can Am was not a vehicle

9

normally sold by Courtesy. Yet, despite this, Courtesy voluntarily chose to undertake this transaction.

In this case, Courtesy is not the manufacturer. It argues as well that it is not the seller but is only involved as an intermediary between the actual owner-seller, Mr. Simon, and the buyer, Mr. Bruno. However, this position ignores that Courtesy first purchased the vehicle from Mr. Simon, its own employee, then acted as the actual and listed seller of the vehicle to Mr. Bruno. Whether Courtesy actually benefitted from the transaction or whether it was done as a "courtesy" is of no consequence as it did in fact sell the vehicle. As such, it assumed the duties normally undertaken by sellers generally under law. *See* La.Civ.Code arts. 2474, et seq. Thus, Courtesy can be liable as a seller if it knew or should have known that the product was defective and failed to declare the defect to the purchaser. *See* La.Civ.Code art. 2475; *see also* La.Civ.Code art. 2545. Here, Mr. Simon, who worked for Courtesy and was the brother-in-law of the general manager Mr. Hargroder, owned the Can Am vehicle immediately prior to the sale from Courtesy to Mr. Bruno. He had specialized knowledge of the vehicle, including the fact that the stock tires and wheels had been replaced with tires and wheels that are not approved for the vehicle according to the manufacturer's specifications. Further, the evidence indicates that information regarding this modification was available to Courtesy in the form of the invoice from G & W Tires, reflecting that the original tires and wheels had in fact been replaced on the Can Am vehicle. This information was not provided to the buyer, Mr. Bruno. Thus, to the extent that there existed an employment relationship between the previous owner, Mr. Simon, and the dealership manager, Mr. Hargroder, there is a question of fact as to the actual or constructive knowledge of Courtesy regarding modifications to the Can Am vehicle which may have created a defective condition, i.e., a greater propensity to roll over. We find this question of fact to be

10

material and, thus, find summary judgment to be inappropriate on the record presented here. *See Alexander*, 123 So.3d 712.

The next question posed is related to the proof of causation for Plaintiff's accident. While the trial court determined that Plaintiff failed to put forth proof in support of the element of causation of the accident, we find that there is such proof submitted in opposition to the motion. First, Plaintiff submitted an affidavit setting forth the factual assertions surrounding the accident. In the portions of his affidavit ruled admissible by the trial court, Mr. Bruno asserts that he suffered severe injury when the Cam Am vehicle rolled over, causing the seat to become detached and throwing Mr. Bruno from the vehicle breaking his femur and injuring his neck, back, and head. He asserts that he was never provided an owner's manual for the Can Am vehicle, nor was he advised to obtain an owner's manual, safety DVD, or dealer checklist. He asserts that he bought the Can Am from the dealer following a brief inspection of approximately three minutes and was never advised to inspect the vehicle, its seat, or its seatbelt prior to use.

Mr. Bruno further asserts he was only provided the high-speed performance key with the vehicle and was not informed of the existence of a separate, low-speed, safety key for the vehicle, nor did he receive the safety key. He states that the dealer emphasized both the speed and safety of the Can Am vehicle. Additionally, Courtesy represented itself as the seller of the vehicle at all times. All payments were made to Courtesy, and all paperwork was made out to Courtesy. Mr. Bruno did not receive any documentation with Mr. Simon's name on it and claims that Mr. Hargroder stated that he "wasn't making much money" off the vehicle, without reference to Mr. Simon, confusing the true seller of the vehicle.

Plaintiff introduced evidence that the tires and wheels of the vehicle had been changed to a larger size than those originally sold with the vehicle. The tires that

11

are sold with the Can Am vehicle measure twelve inches; however, the tires that were on the vehicle when it was purchased by Mr. Bruno were fourteen inches. Mr. Bruno asserts he was not informed of the modified tires being put on the vehicle. The owner's manual introduced into evidence specifically states that the modification of the Can Am by installing oversized tires may change the center of gravity of the vehicle and make it more prone to a roll-over accident. In the deposition testimony of Mr. Seth Richard, attached as an exhibit, he stated that not all tires are suitable for this vehicle and that the tires of the vehicle can affect its stability.

> Plaintiff's burden of proving causation may be met by circumstantial evidence. *Jordan v. Travelers Insurance Co.*, 257 La. 995, 245 So.2d 151 (1971); *Naquin v. Marquette Casualty Company*, 244 La. 569, 153 So.2d 395 (1963); *Weber*, supra. Circumstantial evidence of causation need not negate all other possible causes. *DeBattista v. Argonaut-Southwest Insurance Company*, 403 So.2d 26 (La. 1981), *cert.den.*, 459 U.S. 836, 103 S.Ct. 82, 74 L.Ed.2d 78 (1983).
>
> Both the manufacturer and the retailing supplier of a defective product are liable. See *Bell v. Jet Wheel Blast*, supra; *Chappuis v. Sears Roebuck & Company*, supra.

*Joseph v. Bohn Ford, Inc.*, 483 So.2d 934, 940-41 (La.1986).

Considering Plaintiff's affidavit that the accident involved was a roll-over accident, and considering the additional evidence introduced by Plaintiff in opposition to the motion as detailed above, we find there is sufficient proof of the existence of a potential defective condition and causation presented so as to create a material issue of fact thereon, such that summary judgment is not appropriate on this record.

### *Motion to Strike*

Given our determination that the summary judgment was improperly granted in this case based on the record considered by the trial court, Plaintiff's allegation of error as to the striking of portions of his affidavit submitted in opposition to the

12

motion is "deprived of practical significance" and is rendered moot. *Cat's Meow, Inc. v. City of New Orleans Through Dep't of Fin.*, 98-601, p. 8 (La. 10/20/98), 720 So.2d 1186, 1193.

*LUTPA*

In assignment of error number five, Plaintiff asserts that the trial court erred by concluding that Appellant has not pled a Louisiana Uniform Trade Practices and Consumer Protection Act ("LUTPA") claim. La.R.S. 51:1401, et. seq. However, the judgment is silent as to any ruling on that issue. Our review of the record reveals that the trial court, after granting summary judgment, stated in its oral reasons that all other issues were moot. An appellate court will generally not adjudicate issues not ruled upon by the trial court. *Kilbourne v. Hosea*, 19 So.2d 279, 281 (La.App. 1 Cir.1944). Thus, we do not consider the issue at this time.

## DECREE

The judgement of the trial court granting the motion for summary judgment in favor of defendants Courtesy Automotive Group, Inc. and Courtesy Lincoln Sales Lafayette, LLC dismissing Plaintiff's suit with prejudice is reversed. The matter is remanded for further proceedings. All costs of this appeal are assessed to Defendants, Courtesy Automotive Group, Inc. and Courtesy Lincoln Sales, Lafayette, LLC.

**REVERSED AND REMANDED.**