STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2020 CA 1089

CASSANDRA SKAGGS

VERSUS

AMAZON.COM, INC., and AMAZON FULFILLMENT SERVICES, INC., and
AMAZON WEB SERVICES, INC., and AMAZON SERVICES, LLC, and
TALENTED & GIFTED and HEWLETT-PACKARD COMPANY, and DELL,
INC. a/k/a DELL COMPUTER CORPORATION a/k/a DELL USA LP, and
ENTERGY CORPORATION, and ENTERGY SERVICES, INC., and ENTERGY
GULF STATES LOUISIANA, LLC, and TRINITY PROPERTY
CONSULTANTS / THE HUB AT BATON ROUGE

Judgment Rendered:    DEC 1 5 2021

* * * * * *

On Appeal from the Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket No. C660176

Honorable Donald R. Johnson, Judge Presiding

* * * * * *

Joseph E. "Jed" Cain                 Counsel for Plaintiff/Appellant
Mikalia M. Kott                      Cassandra Skaggs
James C. Klick
New Orleans, LA


Douglas J. Cochran                   Counsel for Defendants/Appellees
Walter F. Metzinger, III             Amazon.com, Inc., Amazon
Baton Rouge, LA                      Fulfillment Services, Inc., Amazon
                                     Web Services, Inc., and Amazon
                                     Services, LLC


* * * * * *

BEFORE: GUIDRY, McCLENDON, AND LANIER, JJ.

Guidry, J. Concurs in the result.

**McCLENDON, J.**

In this personal injury case, the plaintiff appeals a trial court judgment that granted the defendants' motion for summary judgment. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On April 5, 2016, Cassandra Skaggs, a graduate student at Louisiana State University in Baton Rouge, purchased a lithium ion battery through Amazon.com, as a replacement for the battery in her Hewlett-Packard laptop computer. Approximately seven months later, on November 3, 2016, Ms. Skaggs was sitting on her bed in her apartment, with the computer in her lap, when the replacement battery became hot and burst into flames, igniting the bed and bedding and causing burns and other injuries to her hands, legs, thighs, and buttocks. As a result, Ms. Skaggs was admitted to the Baton Rouge General Hospital Burn Center for approximately ten days, where she underwent daily debridement procedures and eventual surgery.

Thereafter, on August 3, 2017, Ms. Skaggs, filed a Petition for Damages, naming as defendants Amazon.com, Inc., Amazon Fulfillment Services, Inc., Amazon Web Services, Inc., Amazon Services, LLC (collectively "Amazon"), Talented & Gifted (T&G), Hewlett-Packard Company (HP), Entergy Corporation, Entergy Services, Inc., Entergy Gulf States Louisiana, LLC, Entergy Louisiana, LLC (collectively "Entergy"), and Trinity Property Consultants, LLC (Trinity).[1] Ms. Skaggs asserted that Amazon and T&G were the manufacturers and sellers of the battery within the meaning of the Louisiana Products Liability Act (LPLA) and, therefore liable to Ms. Skaggs because of the unsafe, unreasonably dangerous, and defective battery. She averred that, although the "seller" of the battery was identified by Amazon as T&G, T&G was merely a storefront for Amazon, or was otherwise a sham entity. Ms. Skaggs alleged additionally, or in the alternative, to

---

[1] Trinity, the manager of Ms. Skaggs's apartment, and Entergy, the provider of electricity to her apartment, were subsequently granted summary judgment and dismissed from the lawsuit. Additionally, although named in the caption, Dell, Inc. a/k/a Dell Computer Corporation a/k/a Dell USA LP was removed from the caption in Ms. Skaggs First Supplemental and Amended Petition for Damages.

2

the extent that Amazon and T&G were not manufacturers, that Amazon and T&G were liable to Ms. Skaggs for their negligence and gross negligence, including the failure to warn Ms. Skaggs of the defective nature of the battery.

In an amending petition, Ms. Skaggs asserted that Amazon undertook the monitoring of products sold on its website and that, through its monitoring activity, Amazon was aware of the potential risks with lithium ion laptop batteries sold on its website, and particularly with regard to several related sellers that included T&G. Ms. Skaggs averred that because Amazon had assumed the duty of monitoring its products and because Amazon failed to notify her of the risks and potential risks of explosions and fires associated with the battery she purchased, Amazon was liable to her for the failure to warn, which was a direct and proximate cause of her injuries and damages.

On October 31, 2019, Amazon filed a motion for summary judgment, contending that it was entitled to judgment as a matter of law. Amazon asserted that it was neither the manufacturer nor seller of the product and, further, that it never undertook any duty to warn Ms. Skaggs of hazards of the specific battery she purchased. Following a hearing on March 9, 2020, the trial court granted Amazon's motion for summary judgment. The trial court signed a judgment on April 22, 2020, and Ms. Skaggs appealed.[2] In her appeal, Ms. Skaggs assigns as

---

[2] In its judgment, the trial court provided the following reasoning:

    1. As [Ms. Skaggs] acknowledged in briefing and at oral argument, Amazon was not the manufacturer of the battery. [Ms. Skaggs] at argument expressly abandoned her claim for strict liability against Amazon under the Louisiana Products Liability Act ("LPLA"). Accordingly, [Ms. Skaggs's] strict liability claim against Amazon is dismissed.

    2. [Ms. Skaggs's] negligence claim against Amazon is also dismissed because Amazon was not the seller of the battery. It was undisputed that Amazon did not have title to or possession of the battery. See [LSA-]R.S. 9:2800.53(2) ("'Seller' means a person or entity who is not a manufacturer and who is in the business of conveying title to or possession of a product to another person or entity in exchange for anything of value."); **Slaid v. Evergreen Indem.**, 32,363 (La.App 2 Cir. 10/27/99), 745 So.2d 793, 799 (courts use LPLA's definition of seller in analyzing whether there is a negligence claim against a non-manufacturer seller).

    3. [Ms. Skaggs's] assumed-duty claim against Amazon is dismissed because, even if there are fact issues on whether Amazon assumed and breached a duty to warn, [Ms. Skaggs] has presented no evidence to support the other elements of an assumed-duty claim, namely that negligent performance of the undertaking increased the risk of harm to [Ms. Skaggs] or that [Ms. Skaggs's] harm was caused by reliance on the undertaking. See **Bujol v. Entergy Servs., Inc.**,

3

error, 1) the trial court's finding that Amazon was not a seller of the battery at issue, and 2) the trial court's dismissal of her claim that Amazon assumed a duty to warn her about the dangerous battery and breached that duty.

## STANDARD OF REVIEW

The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966A(2). After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966A(3).

The burden of proof rests with the mover. LSA-C.C.P. art. 966D(1). Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. LSA-C.C.P. art. 966D(1).

Further, when a motion for summary judgment is made and supported, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. LSA-C.C.P. art. 967B.

In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that govern the trial court's

03-0492 (La. 5/[25]/04), 922 So.2d 1113, 1129 ("Even if a plaintiff proves the assumption of a duty under that standard and that the defendant failed to exercise reasonable care to perform this undertaking, he can only recover if he further proves that either (a) the defendant's failure to exercise reasonable care increased the risk of such harm; ... or (c) harm is suffered because of reliance ... upon the undertaking."); Restatement (Second) of Torts § 323.

4

determination of whether summary judgment is appropriate. **Durand v. Graham**, 19-1312 (La.App. 1 Cir. 6/12/20), 306 So.3d 437, 440.

## DISCUSSION

Amazon is an online marketplace that operates an online store at www.amazon.com. Amazon describes its online store as a service where millions of third-party sellers list products for sale, setting their own prices, and describing their own products. Although Amazon retails some products in its store, it is one of millions of sellers offering products there. When Amazon is the seller of a product, it sources the product, sets the price, and holds title to the product. Additionally, Amazon is listed as the seller in the "sold by" line on the product detail page and transaction records. This case does not involve an Amazon-listed product.

Where a third party is the seller, it is identified in the "sold by" line next to the price and shipping information on the product detail page. The order confirmation page again identifies the seller before the user clicks the "place your order" button. The third-party seller decides what to sell, sources the product, sets the price, and ensures that it is the seller of the product. Additionally, the third-party seller is responsible for ensuring that the product complies with all applicable laws.

All third-party sellers must operate under the Amazon Services Business Solutions Agreement (BSA). Amazon ensures that third-party sellers agree to the BSA by requiring assent as a step in the seller account set-up process. The BSA requires the third-party seller to provide "Required Product Information," which includes, among other things, description of the product, availability status, images, price,[3] shipping and handling charges, and "any text, disclaimers, warnings, notices, labels, warranties, or other content required by applicable Law to be displayed in connection with the offer, merchandising advertising, or sale of" the seller's product.

---

[3] Prior versions of the BSA, including the version in effect when the sale at issue occurred in 2016, required pricing parity with the sellers' other channels; however, this parity provision is not found in the current BSA.

5

Amazon provides payment processing for third-party sellers. It charges the payment instrument designated in the buyer's account and, on a periodic basis, remits the purchase price to the third-party seller minus the service fees the seller agreed to in the BSA.

Further, when setting up an account and again when placing an order with Amazon, purchasers assent to Amazon's Conditions of Use. The Conditions of Use provide that Amazon disclaims all warranties for products sold by third-party sellers. The only warranty provided for a product comes from the third-party seller.

Amazon has a Product Safety Team that monitors customer reviews and other data sources to identify product safety issues, regardless of whether the product was sold by Amazon or by a third-party seller. If an issue is identified, Amazon may remove a product from the store or suspend the seller.

Products are classified by Amazon Standard Identification Numbers, known as ASINs. Different products have different ASINs. In September 2016, the Product Safety Team identified safety reports with certain batteries bearing certain ASINs sold by four third-party sellers, one of which was T&G. Eventually, the Product Safety Team identified approximately sixty safety reports for batteries sold by those sellers, which were spread across fifty ASINs. Those ASINs represented about 0.7% of all battery ASINs offered by those four sellers. As a result, Amazon decided to email customers who had purchased batteries bearing ASINs with reported concerns to advise them that the product may represent a fire hazard and to provide a refund. The battery purchased by Ms. Skaggs was listed under ASIN B00748GAD2, and there were no safety-related reports associated with ASIN B00748GAD2 before Ms. Skaggs's injury. Amazon did not send a message to Ms. Skaggs prior to her injury as there were no safety reports associated with the particular product she purchased.

The Louisiana Products Liability Act (LPLA) "establishes the exclusive theories of liability for manufacturers for damage caused by their products." LSA-R.S. 9:2800.52. The LPLA extends liability to the manufacturer, which means a

6

person or entity who is in the business of manufacturing a product for placement into trade or commerce. LSA-R.S. 9:2800.53(1). In contrast, the LPLA defines a "seller" as "a person or entity who is not a manufacturer and who is in the business of conveying title to or possession of a product to another person or entity in exchange for anything of value." LSA-R.S. 9:2800.53(2).

Initially, we point out that Ms. Skaggs has abandoned her strict liability claim under the LPLA, wherein she had asserted that Amazon was the manufacturer of the battery at issue. Ms. Skaggs has not assigned as error the failure of the trial court to find Amazon liable to her under the LPLA, and in argument to the trial court, as well as to this Court, Ms. Skaggs acknowledged that Amazon was not the manufacturer of the battery that injured Ms. Skaggs. However, in her first assignment of error, Ms. Skaggs contends that the trial court erred in finding as a matter of law that Amazon was not a seller of the replacement battery. She argues that Amazon is not liable under the LPLA, but rather as a negligent product seller who failed to exercise reasonable care.

In order for a non-manufacturing seller to be liable to a buyer for tort damages, the product must be defective, the seller must have had actual or constructive notice knowledge that the product was defective, and the seller must have failed to declare the defect. **Alexander v. Toyota Motor Sales, U.S.A.**, 13-0756 (La. 9/27/13), 123 So.3d 712, 714. See also **Slaid v. Evergreen Indem., Ltd.**, 32,363 (La.App. 2 Cir. 10/27/99), 745 So.2d 793, 799 (a non-manufacturing seller who does not vouch for the product by holding it out as his own does not incur strict manufacturer's liability under the LPLA, but is responsible for damages in tort "only if he knew or should have known that the product sold was defective, and failed to declare it"). All elements must be proven, and a lack of factual support for any element renders summary judgment appropriate. **Alexander**, 123 So.3d at 714.

Although Ms. Skaggs acknowledges that Amazon was not the manufacturer of the battery at issue, she argues that Amazon's role is as a retailer, with control over transactions on its marketplace, who knew or should have known about the

7

dangers posed by the battery before Ms. Skaggs was burned, but failed to provide any kind of warning or notice to her. She avers that she put the battery in Amazon's "shopping cart," paid Amazon for the battery, and never had any contact with T&G. Also, she asserts that Amazon received a fee from the sale of the battery in exchange for participation in the sale. Therefore, according to Ms. Skaggs, because Amazon was in the business of and directly participated in the sale that resulted in Ms. Skaggs taking title to and possession of the battery, Amazon is liable for tort damages as a non-manufacturing seller.

Ms. Skaggs contends that the trial court erred in interpreting LSA-R.S. 9:2800.53(2) contrary to the statute's plain language, requiring a seller to have title to or possession of the thing sold. Ms. Skaggs avers that the trial court's interpretation of LSA-R.S. 9:2800.53(2) is contrary to the plain language of the statute and submits that had the legislature intended to limit the definition of a seller to require conveying title to or possession of a product "from itself" to another person or entity, the legislature would have included such language. Rather, she suggests, being "in the business of conveying title to or possession of a product" is broad enough to include a variety of different circumstances under which a sale can take place. Ms. Skaggs argues that the Louisiana legislature did not intend to allow a Goliath like Amazon to superimpose additional statutory language to avoid liability at the expense of Louisiana citizens. Additionally, she posits that there can be more than one seller of a product and that Amazon's business model was created for the purpose of conveying title to and possession of products from one party to another.

In contrast, Amazon contends that the plain language of LSA-R.S. 9:2800.53(2) forecloses Ms. Skaggs's attempt to expand seller status to online marketplaces that facilitate sales by third parties. Amazon argues that Amazon had no title or possession to convey. Further, Amazon argues that if the legislature intended "seller" to include facilitators, it would have said so. Amazon maintains that although Ms. Skaggs argues that "[i]t is time for the law to catch up with

8

Amazon," any reordering of the rules governing e-commerce must come from the legislature.

The interpretation of any statutory provision begins with the language of the statute itself. **Oubre v. Louisiana Citizens Fair Plan**, 11-0097 (La. 12/16/11), 79 So.3d 987, 997, cert denied, 567 U.S. 935, 133 S.Ct. 30, 183 L.Ed.2d 677 (2012). When a provision is clear and unambiguous and its application does not lead to absurd consequences, its language must be given effect, and its provisions must be construed so as to give effect to the purpose indicated by a fair interpretation of the language used. LSA-C.C. art. 9; LSA-R.S. 1:4; **Oubre**, 79 So.3d at 997. Unequivocal provisions are not subject to judicial construction and should be applied by giving words their generally understood meaning. LSA-C.C. art. 11; LSA-R.S. 1:3; **Oubre**, 79 So.3d at 997. Courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause, or word as meaningless and surplusage if a construction giving force to and preserving all words can legitimately be found. **Oubre**, 79 So.3d at 997. Further, questions of law, such as the proper interpretation of a statute, are reviewed under the *de novo* standard of review. **Thibodeaux v. Donnell**, 08-2436 (La. 5/5/09), 9 So.3d 120, 123.

In this matter, the evidence offered in support of Amazon's motion for summary judgment included the affidavit and deposition of Deborah Harvey, Amazon's representative.[4] Ms. Harvey attested that with regard to the battery at issue, Amazon did not sell the battery, never possessed or touched the battery that T&G sold to Ms. Skaggs, and never took title to the battery. Further, she stated that T&G shipped the battery directly to Ms. Skaggs, that Amazon never labeled the battery as its own (or labeled it at all), as T&G created the warnings,

---

[4] Ms. Harvey stated that she has worked at Amazon since 2007 and was Senior Manager for Fulfillment Center Build-Out Standards from April 2014 until January 2017, Senior Manager, Product Safety from January 2017 to June 2019, and beginning in June 2019 is Head of AWS Launch Operations. She attested that the facts in her affidavit were based on her personal knowledge, including knowledge of Amazon's business records and operations, and the agreements Amazon enters into with customers and third-party sellers.

9

instructions, and labeling for the battery, and that Amazon had no role in those decisions.

Ms. Harvey explained that, in the Amazon marketplace, the seller is identified to the buyer throughout the product viewing and ordering process. Specifically, the seller is identified in the "sold by" line next to the price and shipping information on the product detail page. The order confirmation page again identifies the seller before the user clicks the "place your order" button. Here, the "sold by" line on the product detail page and on the order confirmation page identified the seller as T&G. Additionally, the "fulfilled by" line on the order detail indicated that T&G shipped the battery directly to Ms. Skaggs. Ms. Harvey stated that T&G did not use any Amazon logistics services (also known as "Fulfillment by Amazon") for this transaction. A copy of the mobile phone screenshot of the "order details" produced by Ms. Skaggs in discovery shows, the following:



We find that Amazon met its initial burden of pointing out to the court the absence of factual support for an element essential to Ms. Skagg's claim, i.e., that Amazon was the seller of the battery that injured Ms. Skaggs. Accordingly, the burden then shifted to Ms. Skaggs to produce factual support sufficient to establish that she would be able to satisfy her evidentiary burden at trial. To this end, Ms. Skaggs offered evidence, including the affidavit of Zal Phiroz, experienced in the area of supply chain management. Dr. Phiroz attested that "[w]ith Amazon fulfilling the role of listing products, promoting products, accepting payment and essentially selling products, advertising products, and handling return processes, customer complaints and customer inquiries, they are acting in the capacity of a retailer/seller." According to Dr. Phiroz, Amazon sold lithium ion laptop batteries in partnership with T&G.[5]

Upon our thorough review of the law, jurisprudence, and evidence submitted in support of and in opposition to the motion for summary judgment, we find that Ms. Skaggs failed to present sufficient evidence to establish that Amazon was the seller of the battery at issue. Considering the plain language of LSA-R.S. 9:2800.53(2), in the context of third-party sellers, we cannot say that Amazon is in the business of conveying title to or possession of a product to another person or entity in exchange for anything of value, as the battery was shipped directly to Ms. Skaggs from T&G and Amazon never had the title to or possession of the battery sold. Amazon had no control or influence over the design or construction of the product sold, did not assume or administer product warranty obligations, did not hold the product out as its own, and had no control over warnings, instructions, and labeling. Based on the evidence presented, we cannot say that Amazon became a party to the sale by furnishing the machinery that made

---

[5] We note that Amazon did not object to the affidavit of Dr. Phiroz. Therefore, the affidavit is in evidence and must be considered. See LSA-C.C.P. art. 966D(2); **Talbert v. Restoration Hardware, Inc.**, 17-0986 (La.App. 1 Cir. 5/31/18), 251 So.3d 532, 539, writ denied, 18-1102 (La. 10/15/18), 253 So.3d 1304. Nevertheless, after examining the affidavit of Dr. Phiroz, we find that his testimony consisted of legal opinions and conclusions of law. The ultimate issue to be decided herein is whether Amazon is a seller under Louisiana law, which is the province of the trial court. Ultimate or conclusory facts and conclusions of law are not to be utilized on a summary judgment motion. **Thompson v. South Central Bell Tel. Co.**, 411 So.2d 26, 28 (La. 1982); **Labarre v. Occidental Chemical Company and Texas Brine Company, LLC**, 17-1370 (La.App. 1 Cir. 6/4/18), 251 So.3d 1092, 1102, writ denied, 18-1380 (La. 12/3/18), 257 So.3d 196.

11

the sale possible. Accordingly, we find that Amazon does not meet the definition of a seller in the transaction at issue, and this assignment of error lacks merit.

Nevertheless, in her second assignment of error, Ms. Skaggs argues that, by taking safety-product actions, Amazon assumed a duty to warn her about the defective battery and breached that duty. Ms. Skaggs contends that prior to her accident, Amazon was aware of at least fifty other fires or explosions associated with replacement laptop batteries supplied by related suppliers, approved by Amazon. These related suppliers included T&G. She maintains that Amazon recognized that these defective batteries were coming from three particular suppliers, which shared common ownership, namely, Goodtime, E-Life, and T&G, and were sourced from the same unsafe manufacturer. Ms. Skaggs argues that once Amazon was aware that laptop batteries from these related suppliers were exploding, it should have issued a warning to all Amazon customers who purchased laptop replacement batteries from these suppliers, including T&G.

Ms. Skaggs further contends that she relied upon Amazon's assumed duty and that Amazon's negligent performance of this duty increased her risk of harm, according to the requirements of Section 323 of the Restatement (Second) of Torts. She asserts that Amazon employs numerous voluntary undertakings allegedly to protect its customers, which include setting safety standards for products sold on its website. Ms. Skaggs maintains, however, that Amazon does nothing to verify that the products actually meet its own voluntary standards before or after selling the product. Ms. Skaggs asserts that this practice not only indicates detrimental reliance by Amazon's customers, but also increases the risk that products sold to its customers are unsafe. Moreover, she asserts, Amazon has a policy of proactively monitoring the safety of products sold on its website and warning customers when it recognizes safety concerns. This policy, Ms. Skaggs argues, incentivizes customers, like Ms. Skaggs, to shop with Amazon.

12

Ms. Skaggs also avers that Amazon knew that it alone was the only means of communication between Ms. Skaggs and T&G.[6] She suggests that Amazon knew that it had no documentation that the battery at issue met the safety standards voluntarily set by Amazon, yet chose to warn only certain T&G customers, being those customers who reported product safety issues with specific battery models. By failing to warn Ms. Skaggs, the battery remained in use, and Amazon therefore increased the risk that she would be harmed by the battery. Consequently, Ms. Skaggs suggests, she was lulled into believing that the battery was safe, when Amazon had reason to believe it was not.

Moreover, Ms. Skaggs argues that the fact that there were no complaints regarding the specific model of battery purchased by Ms. Skaggs before her accident is not dispositive of Amazon's knowledge of dangers in the entire line of batteries supplied by T&G. Ms. Skaggs maintains that, given the sheer number of explosions and fires caused by T&G batteries prior to Ms. Skaggs's injuries, about which Amazon knew, questions of fact remain as to when Amazon had notice that the battery purchased by her was defective.

To the contrary, Amazon contends that Ms. Skaggs's claim is a post-sale warning claim. Amazon maintains that its voluntary decision to message buyers of specific battery models that had reported safety concerns did not create a post-sale duty to warn in this instance. Amazon avers that Ms. Skaggs failed to present evidence establishing either a voluntary undertaking that increased the risk of harm to her or that her reliance on the undertaking caused her injury, in accordance with Section 323 of the Restatement (Second) of Torts.

In **Bujol v. Entergy Services, Inc.**, 03-0492 (La. 5/25/04), 922 So.2d 1113, 1129, the Louisiana Supreme Court, while recognizing the applicability of the Restatement (Second) of Torts, discussed the elements of a negligent undertaking claim. The **Bujol** case involved a claim that a parent corporation voluntarily assumed a subsidiary's obligation to ensure the safety of the

---

[6] We note, however, that the screenshot of Ms. Skaggs's "order details" indicated that it contained a link to "contact seller."

13

subsidiary's plant. **Bujol**, 922 So.2d at 1121-22. Although the supreme court drew from the elements in Section 324, which addresses assumed duties for the protection of third parties, **Bujol** was clear that negligently performing a voluntarily assumed duty was not enough. The supreme court stated that the plain language of Section 324A establishes that an assumption of duty arises when the defendant undertakes to render services, to another, and which the defendant should recognize as necessary for the protection of a third person. The supreme court explained that even if a plaintiff proves the assumption of a duty under that standard and that the defendant failed to exercise reasonable care to perform this undertaking, he can only recover if he further proves that (a) the defendant's failure to exercise reasonable care increased the risk of such harm; or (b) the defendant has undertaken to perform a duty owed by the employer to the injured employee; or (c) harm is suffered because of reliance of the employer or the injured employee upon the undertaking. **Bujol**, 922 So.2d at 1129.

In the case *sub judice*, the elements outlined in the Restatement (Second) of Torts § 323 are similar to those in **Bujol**. Section 323 provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increased the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Ms. Harvey attested that the Amazon Product Safety Team monitors customer reviews and other data sources to identify potential product safety issues, regardless whether the product was sold by Amazon or a third-party seller, and that if an issue is identified, Amazon may remove a product from the store or suspend the seller. She further explained that in September of 2016, several months after Ms. Skaggs's purchase, Amazon's Product Safety Team identified safety issues with certain battery models sold by four third-party sellers, one of which was T&G. Eventually, Amazon's Product Safety Team identified

14

approximately sixty safety reports for batteries sold by those sellers, which were spread across fifty ASINs. Ms. Harvey stated that Amazon emailed the buyers of those specific battery models to advise them that the product may present a fire hazard and to provide a refund, but did not send a message to Ms. Skaggs because there were no safety reports associated with the product that she purchased.

Ms. Harvey attested that there were no safety-related reports associated with the particular battery, ASIN B00748GAD2, purchased by Ms. Skaggs before her injury and that Ms. Skaggs's accident was the first report of a safety concern with that particular model. Further, Ms. Harvey testified in her deposition, that at the time of Ms. Skaggs's accident, Amazon had evidence that only those specific models with customer complaints were unsafe. Therefore, according to Ms. Harvey, Amazon had evidence that some of T&G's battery models were unsafe, but not that all of T&G's battery models were unsafe.[7] Ms. Harvey also stated that Amazon removed from the website the particular model sold to Ms. Skaggs after receiving the report of Ms. Skaggs's accident.[8]

After our careful *de novo* review of the record, we find that Amazon sufficiently pointed out to the court the absence of factual support regarding Ms. Skaggs's negligent undertaking claim. Ms. Skaggs was then required to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover was not entitled to judgment as a matter of law. Even were we to determine that Amazon voluntarily assumed a duty to protect Ms. Skaggs and breached that duty, we find that Ms. Skaggs failed to present sufficient evidence to establish that Amazon's actions either increased the risk of harm to Ms. Skaggs or that her reliance on the undertaking caused her injury. See Restatement (Second) of Torts § 323.

Amazon's internal monitoring of potential safety issues could not have increased Ms. Skaggs's risk of harm. Also, Amazon's notification to purchasers of

---

[7] Ms. Harvey testified that with regard to customer complaints, there were three reports of complaints to Amazon that specifically involved T&G prior to Ms. Skaggs's November 3, 2016 accident, which occurred on September 12, 2016, October 17, 2016, and October 19, 2016.

[8] Ultimately, Amazon removed T&G as a seller on its website.

15

other battery models with safety issues did not increase Ms. Skaggs risk of harm. Ms. Skaggs failed to sufficiently show that any failure by Amazon to notify her of safety issues with other battery models of T&G increased the risk of harm to her over the level of risk that existed before Amazon became involved. See **Bujol**, 922 So.2d at 1135. An increased risk means some physical change to the environment or some other material alteration of circumstances. **Id**. Ms. Skaggs was unable to produce evidence that established that Amazon's actions increased the risk of harm to her such that she was worse off than if Amazon had taken no action at all.

Additionally, the evidence presented by Ms. Skaggs did not establish that the harm she suffered was caused by her reliance on the actions that Amazon took with respect to T&G. The emails sent to notify purchasers of T&G batteries with safety issues did not concern the ASIN she purchased. Ms. Skaggs presented no evidence that she was aware of these actions undertaken by Amazon before her accident, and she could not show that she affirmatively relied on Amazon's actions. Accordingly, we find this assignment of error is also without merit, and summary judgment in favor of Amazon was appropriate.

## CONCLUSION

For the foregoing reasons, we affirm the April 22, 2020 judgment of the trial court, granting summary judgment in favor of Amazon.com, Inc., Amazon Fulfillment Services, Inc., Amazon Web Services, Inc., and Amazon Services, LLC, dismissing the claims of Ms. Skaggs against them. All costs of this appeal are assessed to Cassandra Skaggs.

**AFFIRMED.**